JARED WASHKOWITZ
JAW LEGAL: HAWAII
Email: jw102475@gmail.com
1050 Bishop Street, #450
Honolulu, HI 96813
Telephone: (808)840-7410
Facsimile: (415)520-9729

PRO HAC VICE
HOOPER, LUNDY & BOOKMAN, P.C.
JENNIFER A. HANSEN
E-Mail:  jhansen@health-law.com
101 W. Broadway, Suite 1200
San Diego, California 92101-3890
Telephone: (619) 744-7300
Facsimile: (619) 230-0987

Attorneys for Plaintiff
WENDELL FOO, M.D.

# UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAI'I

| | |
|---|---|
| WENDELL FOO, M.D., | Case No. CV 18-00490-JAO-WRP |
| Plaintiff, | |
| | **PLAINTIFF'S OPENING BRIEF** |
| vs. | |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES AND CENTERS FOR MEDICARE AND MEDICAID SERVICES, | Action Filed:        12/14/2018<br>Trial Date:          None Set<br>U.S. District Judge:  Jill A. Otake<br>U.S. Mag. Judge:    Wes R. Porter |
| Defendant. | |

# TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................4

II.   PROCEDURAL HISTORY ............................................................9

III.  STANDARD OF REVIEW............................................................10

IV.   LEGAL ANALYSIS ....................................................................12

      A.    The DAB's First Finding, i.e., Dr. Foo Reported Waialae Ave.
            as His Practice Location in 2010 Was Supported by Substantial
            Evidence and Free of Legal Error Was Arbitrary, Capricious,
            and An Abuse of Discretion..............................................17

      B.    The DAB's Second and Third Findings, i.e., that Dr. Foo Has
            Shown No Basis to Reject the ALJ's Finding that He Did Not
            Change His Practice Location in his Enrollment Records Prior
            to the On-Site Reviews  & That the ALJ Resolved the Board's
            Concerns About the PECOS Records on Remand without Error
            in Analysis Was Arbitrary, Capricious, and An Abuse of
            Discretion ........................................................................18

      C.    The DAB's Fourth and Fifth Conclusions, i.e., CMS Had
            Authority and a Legal Basis to Revoke Dr. Foo's Privileges,
            Was Arbitrary, Capricious, and An Abuse of Discretion and
            Otherwise Not in Accordance with Law Because Neither
            Congress Nor the Secretary Could Constitutionally Delegate
            Discretionary Authority of the Type Here to a Private
            Contractor........................................................................23

      D.    The DAB's Fourth and Fifth Conclusions, i.e., CMS Had
            Authority and a Legal Basis to Revoke Dr. Foo's Privileges,
            Was Arbitrary, Capricious, and An Abuse of Discretion and
            Otherwise Not in Accordance with Law Because They Ratify
            Agency Conduct That Is Contrary to the Law and Applicable
            Regulations......................................................................24

      E.    The DAB's Fourth and Fifth Conclusions, i.e., CMS Had
            Authority and a Legal Basis to Revoke Dr. Foo's Privileges,
            Was Arbitrary, Capricious, and An Abuse of Discretion and
            Otherwise Not in Accordance with Law Because They Ratify

# TABLE OF CONTENTS (cont.)

Prejudicial Errors of Procedure, Including Abuses of Discretion Under and Law and Applicable Regulations ......................................26

F.  The *Adora* Case Supports Dr. Foo's Claim that the Revocation Was Improper......................................................................................31

V.  CONCLUSION.............................................................................................33

# TABLE OF AUTHORITIES

## CASES

*Adora Healthcare Services, Inc.*
DAB No. 2714 (2016) ...................................................................... 31, 32, 33

*David v. Four Seasons Hotel Ltd.*
810 F. Supp. 2d 1145 (D. Haw. 2011)...........................................................12

*Gaspar v. Bank of Am., N.A.*
No. 10-00323 JMS/BMK, 2010 U.S. Dist. LEXIS 111286 (D. Haw.
Oct. 8, 2010) ...............................................................................................12

*Heart 4 Heart, Inc. v. Sebelius*
No. 13-cv-03156, 2014 U.S. Dist. LEXIS 90678 (C.D. Ill. July 3,
2014) ...........................................................................................................11

*In Re CMS LCD Complaint: Noncovered Services*
DAB No. 2500 (Mar. 7, 2013).......................................................................29

*K.S. v. Fremont United Sch. Dist.*
545 F. Supp. 2d 995 (N.D. Cal. 2008)...........................................................11

*Mathewson v. Aloha Airlines, Inc.*
82 Haw. 57 (Haw. 1996) ..............................................................................12

## STATUTES

5 U.S.C. § 551 ......................................................................................................10

5 U.S.C. § 704......................................................................................................10

5 U.S.C. § 706.................................................................................................. 10, 11

42 U.S.C. § 1395 ........................................................................................... ….10

## REGULATIONS

42 C.F.R. § 405 ...................................................................................................10

42 C.F.R. § 424.502 ..........................................................................................7, 32

42 C.F.R. § 424.535 ...................................................................................... passim

42 C.F.R. § 498.82 ..............................................................................................10

## I.      INTRODUCTION

As documented and acknowledged by the Administrative Law Judge

("ALJ"), "Dr. Foo is an anesthesiologist who does not maintain his <u>own</u> office

open to the public but instead practices at several ambulatory surgical centers

(ASCs)."   (Administrative Record ("AR") Item No. 4, p. 48 (citing ALJ Decision

I, at 1 (emphasis added); P. Ex. 17, at 2 (AR 612).)   This fact, as summarized by

the ALJ is notable because the ALJ as well as the Departmental Appeals Board

("DAB") recognized that Wendell K. Foo, M.D. ("Dr. Foo") was "operational" at

several ASCs but disregarded this information and ruled against him in upholding

the revocation of  his Medicare privileges by somehow construing Dr. Foo's

undisputed UPS Store correspondence address as an additional, active and physical

practice location of Dr. Foo's, and running an outdoor-photograph-only "site visit"

thereof, even though Defendant and the Medicare Administrative Contractor

("MAC") have never produced anything other than a completely blank physical

practice location field in Dr. Foo's 2014 official provider revalidation application.

Quite the opposite of "affirmative evidence" against Dr. Foo, this is an astounding

recordkeeping omission that Defendant and the MAC have consistently tried to

deflect and explain away, but have never been able to explain.

It is undisputed that Dr. Foo provides anesthesiology services at several

locations, including the Hawaiian Eye Center (606 Kilani Ave., Wahiawa, HI

96786), SurgiCare of Hawaii (500 Ala Moana Blvd., Tower 1 Suite B, Honolulu, HI 96813), and the Hawaii Endoscopy Center (2226 Liliha St., Honolulu, HI 96817), which are well-known ambulatory surgery centers in the State of Hawaii. (Foo Decl., P. Ex. 21 p. 2 ¶ 5 (AR 633-639); Wahl Decl., P. Ex. 19, p. 3 ¶ 6 (AR 621-630).) Dr. Foo is an anesthesiologist who has been practicing medicine for nearly 40 years and has been actively participating in Medicare for 25 years. His anesthesiology practice is entirely based upon performing anesthesia services at the request of a surgeon, at a surgical facility chosen by the surgeon. These anesthesia services are performed almost exclusively at Ambulatory Surgery Centers in outpatient settings. (*See* Wahl Decl., ¶ 3, AR 621.). The nature of Dr. Foo's anesthesiology specialty and practice means that Dr. Foo's practice location is whichever facility he is needed at by the surgeon. Dr. Foo does not have a practice location of his own, as many other medical specialists such as family practice physicians do. (*Id.*, ¶ 4, AR 621.)

The regulation relied upon by the Centers for Medicare and Medicaid Services ("CMS") to revoke Dr. Foo's enrollment and billing privileges in the Medicare program is 42 C.F.R. § 424.535(a)(5)(i), which provides in relevant part as follows:

> (a) Reasons for revocation. CMS may revoke a currently enrolled provider or supplier's Medicare billing privileges and any corresponding provider agreement or supplier agreement for the following reasons:

. . .

  (5) On-site review. Upon on-site review or other reliable evidence, CMS determines that the provider or supplier is either of the following:

    (i) No longer operational to furnish Medicare-covered items or services.

    (ii) Otherwise fails to satisfy any Medicare enrollment requirement.

The regulation at issue, Section 424.535(a)(5)(i) says "No longer operational to furnish Medicare-covered items or services." However, as is undisputed in the record, Dr. Foo was always operational. Thus, under a plain reading of the regulation, CMS, the ALJ, and DAB have gone too far in revoking Dr. Foo's privileges by putting a blind eye to the fact that he was operational at multiple ASCs. Even assuming CMS could somehow add language to the regulation to extend the definition of operational to that which was reported on a revalidation application, which it cannot, no reasonable and impartial fact-finder could infer a "listed practice location" from a blank physical practice location field in the record.

    Operational means the provider or supplier has a qualified physical practice location, is open to the public for the purpose of providing health care related services, is prepared to submit valid Medicare claims, and is properly staffed, equipped, and stocked (as applicable, based on the type of facility or organization, provider or supplier specialty, or the services or items being rendered), to furnish these items or services.

PLAINTIFF'S OPENING BRIEF       CV 18-00490-JAO-WRP

(42 C.F.R. § 424.502.)  There is no dispute that Dr. Foo was <u>always operational</u> under this definition.

The revocation determination made against Dr. Foo was premised on the notion that, in a 2014 Medicare revalidation enrollment application, Dr. Foo allegedly identified a UPS Store location as a "practice address."  CMS <u>presented no documentary (or other) evidence related to the 2014 revalidation application confirming what CMS asserts regarding Dr. Foo's practice addresses</u>.  All evidence the agency has presented concerning the 2014 application is, in fact, <u>devoid of any practice address information, which CMS' own witness conceded</u>.  In effect, CMS tried to  prove an affirmative act by Dr. Foo with an absence of information.  Moreover, CMS continues to insist this lack of information somehow contradicts and discredits the direct evidence Dr. Foo has presented about the actual contents of his 2014 revalidation application.   Both Dr. Foo and witness D.W. testified that D.W. correctly entered the ASCs as practice locations on the revalidation application filed in 2014.  (Wahl Decl. ¶ 15, AR625; Foo Decl. ¶ 13, AR 636.)  The ALJ's reliance upon a document that was blank in the "Practice Location Information" field—and therefore did not list a practice location—and site visits that lacked common sense was arbitrary, capricious, an abuse of discretion and not otherwise in accordance with the law.

Dr. Foo first reiterates, below, his objections and concerns about the ALJ's and DAB's continued reliance on **irrelevant** and **inadmissible** evidence, which **does not amount to substantial evidence** in any case.  This is especially true here, where a non-governmental agency contractor, Noridian, revoked the rights of an experienced and well-regarded anesthesiologist, by somehow "construing" the **<u>correspondence</u> address (a well-known local UPS Store private mailbox facility)**[1] listed on Dr. Foo's 2014 online Medicare provider revalidation submission as an allegedly operational **practice location** of some sort.

It is undisputed that the single most important piece of evidence relating to Dr. Foo's stated physical practice location or locations – namely, CMS's Report from Provider, Enrollment, Chain and Ownership System ("PECOS"), subsection "Physical Locations and 'Special Payments' Address" from Section 4, "Practice Location Information" – is **blank** in the record.[2]  (AR 677.)  It is shocking that this

---

[1] This UPS Store franchise hosts the mailboxes of several other Medicare providers and even the Hawaii State Department of Health's Medical Cannibis Registry, as a quick search of CMS's own NPI Registry reveals.  (AR 419-420; P. Ex. 22, AR 640-648 and P. Ex. 23, AR 649.)

[2] The importance of this point cannot be overstated, because it was Dr. Foo's 2014 provider revalidation application, submitted through the CMS PECOS system, that precipitated this entire chain of events.  Dr. Foo has at all relevant times maintained that the application submitted with the "Physical Locations and 'Special Payments' Address" information properly completed with the aforementioned ambulatory surgery centers listed as physical location/practice location addresses. (Wahl Decl., P. Ex. 19, p. 5-6, ¶¶ 14-15; AR 624-625.)  While CMS disputes this, what they cannot dispute is that they alone possess the only

is the type of lacking evidence CMS, ALJ, and DAB rely on to revoke the privileges of an anesthesiologist who had been an active participating provider in the Medicare program in good standing for 25 years.

Dr. Foo seeks review of the Final Decision on the grounds that the agency action, findings, and conclusions were arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the law, in excess of statutory jurisdiction, and unsupported by substantial evidence.

## II. **PROCEDURAL HISTORY**

On April 8, 2016, Administrative Law Judge Leslie C. Rogall ("the ALJ") issued a decision in case number C-16-50. (AR Item 1, pp. 1-10, "ALJ Decision I".) Pursuant to 42 Code of Federal Regulations ("C.F.R.") Section 498.82 and the procedures of the Departmental Appeals Board ("DAB") – Civil Remedies Division, Dr. Foo sought review of the ALJ's April 8, 2016 decision, which affirmed the CMS revocation of the "enrollment and billing privileges" of Dr. Foo. Dr. Foo's request resulted in the matter being remanded with instructions to the ALJ. (AR Item 2, pp. 11-27, "Remand Decision".)

On remand, the matter was assigned a new case number, C-17-378. On January 8, 2018, the ALJ issued a decision in case number C-17-378, again

---

official copy of the PECOS revalidation submission record data – and that critical data field inexplicably contains no address whatsoever.

affirming CMS's revocation of the "enrollment and billing privileges" of Dr. Foo. (AR Item 3, pp. 28-45, "ALJ Decision II".)  Pursuant to 42 C.F.R. § 498.82 and the procedures of the DAB – Civil Remedies Division, Dr. Foo requested review of the January 8, 2018 decision, which resulted in the Final Decision at issue here.  On October 16, 2018, the DAB issued a Final Decision on Review of Administrative Law Judge Decision. (AR Item No. 4, pp. 46-71 "Final Decision".)

## III.   <u>STANDARD OF REVIEW</u>

This Court has jurisdiction to review final decisions of the Secretary of the HHS pursuant to 42 U.S.C. §§ 1395cc(h)(1)(A), (j)(2) and 405(g).  Such review is governed by the provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq. including without limitation 5 U.S.C. § 704.  Plaintiff has exhausted all available administrative remedies to challenge the Medicare contractor's decision thus giving this Court jurisdiction to review the actions at issue.  The Court reviews the decisions pursuant to 5 U.S.C. § 706, which provides as follows.

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall—
>
> **(1)** compel agency action unlawfully withheld or unreasonably delayed; and
>
> **(2)** hold unlawful and set aside agency action, findings, and conclusions found to be—

    **(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    **(B)** contrary to constitutional right, power, privilege, or immunity;

    **(C)** in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

    **(D)** without observance of procedure required by law;

    **(E)** unsupported by substantial evidence in a case subject to sections 556 and 567 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

    **(F)** unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706; *see K.S. v. Fremont United Sch. Dist.*, 545 F. Supp. 2d 995, 1004-05 (N.D. Cal. 2008) (finding that the ALJ's determination that witnesses who had opinions contrary to the school district were less credible was arbitrary and capricious because it applied a separate and higher standard to plaintiff's witnesses); *Heart 4 Heart, Inc. v. Sebelius*, No. 13-cv-03156, 2014 U.S. Dist. LEXIS 90678, at \*28-29, 32-33 (C.D. Ill. July 3, 2014) (finding that Medicare and MAC decisions were unsupported by substantial evidence where their finding was contrary to uncontradicted opinion of treating physician and occupational therapist and relied on selective reading of medical records).

## IV.  **LEGAL ANALYSIS**

"The starting point of statutory interpretation is the language of the statute itself." *David v. Four Seasons Hotel Ltd.*, 810 F. Supp. 2d 1145, 1154 (D. Haw. 2011) (citing *Mathewson v. Aloha Airlines, Inc.* 82 Haw. 57 (Haw. 1996)).  Where a statute's meaning is plain, unambiguous and explicit, there is no need to look beyond that language for a different meaning. *Gaspar v. Bank of Am., N.A.*, No. 10-00323 JMS/BMK, 2010 U.S. Dist. LEXIS 111286, at *16 (D. Haw. Oct. 8, 2010) (citations omitted).  Rather, the court's "sole duty is to give effect to the statute's plain and obvious meaning." *Id.*  Under the plain reading of the regulation at issue, Dr. Foo was <u>always operational</u> and no basis for revocation existed.

No evidence exists that either CMS or Noridian ever spoke with Dr. Foo himself regarding what is – at most – an obvious omission on his re-validation application (and Dr. Foo vigorously disputes that there was ever any such omission in his as-filed online submission).  (Hoffmann, p. 39:10-15; Finneman p. 90:12-15, AR App. C.)  Nor is there any evidence that anyone at CMS or Noridian ever spoke with Deryck Wahl (D.W.), Dr. Foo's son, who assisted Dr. Foo with administrative matters related to Dr. Foo's practice for over 15 years.  (Hoffmann, p. 40:10-15; Finneman p. 90:16-20.)  The PIM provides that the contractor has discretion to use the contact persons listed in section 13 of Form CMS-855 for all

written and oral communications related to the provider's enrollment. (CMS Ex. 21, p. 10; AR 765.)  Given CMS' possession of a PECOS record with such an important data field blank, it would have made sense for CMS to contact the person listed in Dr. Foo's Form CMS-855 to clear up any confusion or discrepancies regarding his application.  Yet, the receptionist that Noridian employee, Liza Hoffman, allegedly spoke with, whose name was never documented, was never listed as an employee or authorized representative of Dr. Foo on the CMS-855.  (Hoffmann, p. 42:10-12; 46:2-6, AR App. C.)

Because there is no evidence that Dr. Foo represented his practice address as being a UPS store in his 2014 application, CMS turned back the clock to **2010**.  It did so in patent violation of the Medicare Program Integrity Manual ("PIM") (Ch. 15, § 15.25.2.2.D)[3], and it did so at an incredibly prejudicial time – one level removed from MAC reconsideration, and for the very first time at the ALJ appeal level.  It is ironic that CMS relies on information from 2010—when Dr. Foo was **not** excluded—in order to *ex post facto* justify the exclusion of Dr. Foo in 2015. Common sense dictates, if Dr. Foo successfully filled out his application in 2010,

---

[3] As of 2018, PIM Ch. 15, § 15.25.2.2.D expressly forbids the CMS PEOG (Provider Enrollment & Oversight Group), and by extension CMS and the MAC, from the following: "PEOG may not introduce new denial or revocation reasons or change a denial or revocation reason listed in the initial determination during the reconsideration process." *(available at* https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/pim83c15.pdf.)

and continued practicing without incident for four years, then he should not expect
to have his privileges revoked because *Noridian*, **the Hawaii MAC starting in
2013**, imputed the 2010 information into his 2014 application. That is part of the
problem with Noridian's and CMS's **abuse of discretion** in this matter: both lack
common sense and due regard for Dr. Foo's interest, and have flouted Medicare
evidentiary rules and basic notions of due process at every turn.

With respect to the evidence in Dr. Foo's 2010 application, Noridian was not
even the contractor in 2010, the CMS witnesses had no personal knowledge of the
information contained in the 2010 correspondence and did no independent research
regarding the information listed in the March 4, 2010 letter. (Finneman, p. 89:6-22
-90:1-11.) Ms. Finneman further confirmed that Noridian failed to do any research
as to whether the storage locations listed (which are also clearly listed in Dr. Foo's
2014 online revalidation submission) were actual practice locations. (Finneman, p.
110:15-111:22.) Even the most cursory Internet search, not to mention a search of
CMS's own National Provider Registry, would have shown these listed medical
record storage locations to be ambulatory surgery centers, i.e., practice locations.
Yet, CMS and Noridian apparently have pursued this revocation with tunnel
vision, failing to take into account the true facts and circumstances surrounding
this case and choosing to ignore the medical records storage locations and
countless CMS-1500 claim forms, submitted directly to Noridian and thereby

known to CMS, which lists Dr. Foo's three aforementioned practice locations within Box 32 for Service Facility Location Information.  (Foo Decl., P. Ex. 21, pp. 2-3, ¶¶ 7-9, AR 634-635; Wahl Decl., P. Ex. 19 pp. 4-5 ¶¶ 8-10, AR 623-624; P. Ex. 16, AR 610.)   The ALJ's finding that Dr. Foo identified a practice location of his as 4348 Waialae Ave. is not supported by substantial evidence.

Even if CMS and Noridian could somehow reasonably conclude that Dr. Foo identified 4348 Waialae Ave. as a practice location—based on a blank physical location field—then this entire case arises from what can be charitably described as a "misunderstanding" by *Defendant* (not Dr. Foo) regarding Dr. Foo's physical practice location.  The record demonstrates that the decision to revoke Dr. Foo's privileges is a **violation of the applicable laws and regulations**.

Read in their entirety, the applicable laws, regulations, and sub-regulatory guidance in this matter prevent Dr. Foo, an anesthesiologist who has been participating in the Medicare program in good standing for approximately 25 years, from having his privileges revoked, even assuming purely *arguendo* that there were technical defects in complying with application instructions.  Neither CMS nor Noridian complied with the PIM, which CMS itself drafted, when both chose to ignore voluminous relevant information in their direct purview.  "[I]f required data/documentation is missing, (b) data cannot be verified, and/or (3) there are data discrepancies, contractor requests missing/clarifying information

from the provider." (PIM, Ch. 15 § 15.7(c); AR 766.). It is simple fact that the required field, "Physical Locations and 'Special Payments' Address" within CMS PECOS Report is blank, and therefore missing, within the record, despite CMS and Noridian's novel attempts to create or impute text that does not exist in the data field. In this case, neither CMS nor Noridian made efforts to obtain any missing/clarifying information from Dr. Foo or any named representative designated by him. All the record reveals is, at most, two photographs of the exterior taken at two different times, with no communication to Dr. Foo about the on-site visits at any point.

Despite the explicit direction of the PIM, Ms. Finneman merely testified that Noridian takes what the provider purportedly attests as true and accurate. (Finneman, p. 111:16-22.) Incredibly, CMS and Noridian *also* take the remarkable position that information that is plainly missing on their own PECOS records is "true and accurate" by virtue of having been "unchanged" from some prior application by Dr. Foo to an entirely different MAC (Palmetto), such that the application does not reflect *any* data *by recordkeeping design*. This utterly illogical explanation cannot possibly hold true. It is clear that neither Noridian nor CMS diligently investigated Dr. Foo's practice location before either entity twice sent an on-site investigator to photograph the outside of the neighborhood UPS

Store, completely unbeknownst to Dr. Foo.[4]

Finally, the record as a whole demonstrates that, even if CMS and Noridian were not legally prohibited from revoking Dr. Foo's privileges, it was still an **abuse of discretion** to do so.  Dr. Foo's anesthesiology practice is entirely based upon performing anesthesia services at the request of a surgeon, at a surgical facility chosen by the surgeon.  To the extent technical defects existed in Dr. Foo's 2014 application materials purportedly gave CMS and Noridian discretion to revoke Dr. Foo's privileges—and Dr. Foo vigorously disputes that any such defects existed—there is an overwhelming amount of evidence and authority that demonstrates it was an abuse of discretion for CMS and Noridian to do so, under the specific facts and circumstances of this case.  Consequently, it was also an abuse of discretion for the ALJ to affirm that decision and for the DAB to affirm the ALJ Decision.  Therefore, Dr. Foo respectfully requests this Court to reverse in full the revocation of Dr. Foo's enrollment and billing privileges.

    **A.**    **<u>The DAB's First Finding, i.e., Dr. Foo Reported Waialae Ave. as His Practice Location in 2010 Was Supported by Substantial Evidence and Free of Legal Error Was Arbitrary, Capricious, and An Abuse of Discretion</u>**

CMS inappropriately relies on details about an application Dr. Foo submitted four years earlier as probative of what occurred in 2014.  These details

---

[4] Declaration of W. Foo, P. Ex. 21 at ¶ 19, AR 637.

had never before been raised until this matter was already before the ALJ. The 2010 evidence should not have been considered at all by the ALJ, because it should not have factored into the MAC's reconsideration decision concerning Dr. Foo, nor is there credible or reliable evidence that it did. Nevertheless, even if it is considered, the materials CMS introduced regarding Dr. Foo's 2010 enrollment profile do not amount to "substantial" evidence of what happened in 2014.

**B.** **The DAB's Second and Third Findings, i.e., that Dr. Foo Has Shown No Basis to Reject the ALJ's Finding that He Did Not Change His Practice Location in his Enrollment Records Prior to the On-Site Reviews & That the ALJ Resolved the Board's Concerns About the PECOS Records on Remand without Error in Analysis Was Arbitrary, Capricious, and An Abuse of Discretion**

While there is insufficient evidence to establish the reliability of the PECOS records, an error of fact, the ALJ also improperly relied on the PECOS records as a bases for her legal conclusions, which resulted in erroneous legal conclusions.

The 2014 PECOS records show no record exists for Dr. Foo's practice location, based on CMS's own evidence. (CMS Ex. 9, AR 677; Hoffmann p. 38:2-17.) Ms. Hoffmann and Ms. Finneman both confirmed that a provider can report (supplement) information that is not added or updated by PECOS. (Hoffmann, p. 39:1-9; Finneman, p. 88:18-22 – 89:2-5.) CMS failed to explain the discrepancies in its own records. CMS failed to provide a clear explanation as to why CMS Exhibit 9 looks different from Petitioner's Exhibit 17. (Finneman, pp. 102:1-

104:7.)   In addition, CMS failed to provide a clear explanation as to why CMS Exhibit 11 looks different from Petitioner's Exhibit 18.  (Finneman, pp. 104:8-105:11)  Neither the July 2015 screenshot, nor the January 2016 PECOS records shows a message that "no current record exists" and the field for the medical records storage facilities remains populated with ASC addresses, despite *no changes to that medical records storage information*.  (P. Ex. 17 at 4, AR 614; P. Ex. 18, at 3, AR 618.)   Furthermore, if the practice location information was missing from the 2014 report because it did not change, the correspondence address information should have been missing for the same reason.

Dr. Foo's very name, date of birth, state in which he was born, social security number, practitioner type, specialty type and so forth should also have been missing from CMS's official PECOS records for the exact same reason, because none of this demographic data has changed. (P. Ex 17 at 1, AR 611).  But the correspondence address, along with Dr. Foo's demographic data, does appear in the 2014 printout report.  As such, that portion of the 2014 PECOS report is facially—and fatally—inconsistent with Ms. Finneman's bald and self-serving claim about why the PECOS report would state that no practice location information was available on CMS's PECOS record.

CMS and Noridian simply cannot claim that "No Data Provided" on one section of the PECOS application means "no change from prior data", in the face

of obviously unchanged data (e.g., Dr. Foo's name, date of birth, medical specialty, correspondence address, etc.) that nonetheless does appear on the application. Respectfully, the novelty of such a "no changes equates to a blank field for CMS recordkeeping purposes" claim defies all logic and common sense, although the goal of the novel claim is clear – to bootstrap alleged extrinsic evidence into an undisputedly blank section within the four corners of a document. For these reasons, the factual findings regarding PECOS are not supported by even a *scintilla* of evidence, much less substantial (e.g., reliable or credible) evidence.

Even CMS's own witness agreed that providers can submit information in PECOS that is not added or included in the provider's official enrollment "[u]ntil the contractor reconciles it," i.e. verifies that the information is correct). (C.F. testimony, Tr. at 88-89, 92, and Final Decision, p. 17, AR 62) "While the supplier may see whatever information they input into each section of the application, that application information is not automatically added to the final enrollment record until after it has been verified by the applicable [Medicare administrative contractor]." (Final Decision, p. 19, AR 64, quoting CMS Ex. 16, at 3, AR 723.) Thus, just because the field was blank does not necessarily mean Dr. Foo and/or D.W. did not input the correct practice addresses into the application, the fact is they were just blank on the "report" document CMS produced and Dr. Foo did not

maintain a copy of the actual application  as it was done electronically.  The PECOS records relied upon by CMS, the ALJ, and DAB are inherently unreliable.

Relatedly, the ALJ's decision to admit the phone log is legally erroneous and further demonstrates why the finding that Dr. Foo identified a UPS Store as a practice location is not supported by substantial evidence.  The phone log retained by CMS and/or Noridian, and which for unknown reasons is hardly a model of legibility, should not have been admitted in this matter.  The PIM expressly prohibits MACs from introducing new reasons for revocation on reconsideration review.  PIM, Ch. 15, § 15.25.2.2.D.  Dr. Foo has repeatedly raised this evidentiary issue throughout these proceedings, with no meaningful reply from CMS.  That is because the MAC blatantly violated this prohibition in this instance after realizing the initial reasons for revocation could not stand on their own, or that the MAC felt a need to belatedly bolster its rationale for disenrollment.  Respectfully, the ALJ's decision to admit and rely on such proffered evidence was legally erroneous.

Briefing and testimony further confirmed the insignificance of the telephone log identified as CMS Exhibit 8.  In a surprising revelation, Ms. Hoffmann confirmed that she **processed** and **approved** Dr. Foo's 2014 revalidation application.  (Hoffmann, p. 27: 18-21; 28:3-5; 56:5-11.)  In fact, Ms. Hoffmann **did not even know what caused the re-enrollment application to be denied**.  (Hoffmann, p. 56:12-17.)   Ms. Hoffmann also revealed in her oral testimony that

she had no issues with the information provided by Dr. Foo for his re-enrollment application.  (Hoffmann, p. 61:13-16.)   Furthermore, she did not initiate any request for a site visit.  (Hoffmann, p. 68:21-69:2.)  She did not see any red flags with her verification activity to initiate a site visit.  (Hoffmann, p. 69:16-19.)

Ms. Hoffmann did not even correctly identify the telephone log in her declaration.  (CMS Ex. 17, AR 735-736; Hoffmann, p. 44: 11-16, AR App. C.) Furthermore, Ms. Hoffmann never actually verified that 4348 Waialae Avenue was a practice location.  Rather, the phone log, which is hardly a model of legibility even when greatly magnified, states: "verified that the phone number listed in Section 4 of the application reaches the address listed on[sic] that it is the primary phone number used for patients to set up appointments or ask questions on billing, [Waialae Ave.]."  (CMS Ex. 8, AR 676.)  The number called by Ms. Hoffmann cannot be tied to a practice location of Waialae Avenue because Waialae Avenue is a well-known neighborhood UPS Store private mailbox facility, not an office of Dr. Foo's with a person present to take calls.

Even assuming CMS could evade the clear prohibition of the PIM against introducing new denial or revocation reasons when reconsidering a provider sanction (the phone log, which was never mentioned or even alluded to in the original revocation letter, is exactly such a new reason), CMS nonetheless inappropriately relied upon the phone log in support of its position that Dr. Foo

represented Waialae Avenue as his practice location.  Dr. Foo himself did no such thing, and never authorized anyone to represent Waialae Avenue as his practice location, given its patently obvious existence as a UPS Store private mailbox and mailing services facility.  Medicare practitioners are permitted to use "any" telephone number for correspondence, regardless of whether the number is tied to any particular correspondence or practice location.

Ms. Hoffmann, contrary to her own sworn-to and submitted declaration, failed to recall the alleged phone call or any details about the call, aside from the claim that she spoke to a "receptionist" that she could not name, because such information was never taken down, despite her testimony that it is her practice to document such information.  Ms. Hoffmann's self-serving allegation in her declaration that she reached or otherwise collected or ascertained the practice location address for Dr. Foo should not be given any weight since she did not recall the conversation, did not draft her own declaration, and did not even cite to the correct exhibit for the phone log.  CMS Exhibit 8 clearly lacks sufficient indicia of reliability and is not persuasive evidence of Dr. Foo's practice location.

**C.**  **The DAB's Fourth and Fifth Conclusions, i.e., CMS Had Authority and a Legal Basis to Revoke Dr. Foo's Privileges, Was Arbitrary, Capricious, and An Abuse of Discretion and Otherwise Not in Accordance with Law Because Neither Congress Nor the Secretary Could Constitutionally Delegate Discretionary Authority of the Type Here to a Private Contractor**

Under the controlling Medicare statutes and regulations, the decision of whether to revoke enrollment and billing privileges involves some level of discretion. Here, the discretionary decision-making has been delegated to private Medicare contractors, in this case Noridian. Neither Congress nor the Secretary has the constitutional authority to delegate regulatory discretionary authority to private contractors. Thus, Noridian acted without authority and in violation of the Constitution when it chose to revoke Dr. Foo's billing and enrollment privileges, and the DAB may not uphold such an improper exercise of discretion.

**D.** **The DAB's Fourth and Fifth Conclusions, i.e., CMS Had Authority and a Legal Basis to Revoke Dr. Foo's Privileges, Was Arbitrary, Capricious, and An Abuse of Discretion and Otherwise Not in Accordance with Law Because They Ratify Agency Conduct That Is Contrary to the Law and Applicable Regulations**

Assuming Medicare regulations permit MACs to revoke a supplier's Medicare billing privileges where an on-site inspection of a practice location reveals that a supplier no longer is operational (42 C.F.R. § 424.535(a)(5)), there is no such justification for reaching such a conclusion based on an inspection of a location that a supplier has only identified as a correspondence address, without further, legitimate inquiry into whether that is in fact the supplier's practice location. Especially where, as here, the alleged "practice location", a well-known private mailbox and UPS shipping services franchise, is "inspected" via nothing more than *photographs taken from the exterior*.

PLAINTIFF'S OPENING BRIEF    CV 18-00490-JAO-WRP

MACs such as Noridian, have the responsibility to carry out their provider-supplier validation function in a way that is consistent with the applicable Medicare rules and guidelines and to help preserve the Medicare trust fund and avoid fraud, waste and abuse.  MACs cannot do so in a way that is negligent or in a way that detrimentally impacts or improperly revokes enrollment for providers who are legitimate providers eligible for participation.  This is especially true here when all Noridian had to do was query its own claims systems, or actually seek to contact Dr. Foo or a named representative of his, to see the practice locations where Dr. Foo rendered services and submitted claims.

Dr. Foo maintains that the MAC, at minimum, was obligated under the PIM to make additional efforts to clarify with Dr. Foo the nature of the post office box before revoking his billing privileges.  *See generally* PIM, Ch. 15, §§ 15.7, et seq. Noridian and CMS have at all relevant times had the information within their systems, easily available to validate that Dr. Foo did, in fact, have multiple operational practice locations (the aforementioned Hawaiian Eye Center, SurgiCare of Hawaii and Hawaii Endoscopy Center ambulatory surgery centers). CMS and Noridian have at all relevant times resorted to alleged extrinsic evidence to impute the Waialae Ave. address as a **physical practice location,** even though the PECOS record undisputedly only lists the Waialae Ave. address as a **correspondence address**.  It is evident that there has been no substantive concern

raised about Dr. Foo.  Moreover, accepting CMS and Noridian's novel PECOS recordkeeping explanation actually necessitates a finding that the PECOS system contains serious and grave discrepancies, because under such explanation, PECOS can both display (name, date of birth, social security number, etc.) and **fail** to display (practice location and "special payments" address) information that "did not change" from a prior provider validation application.  Finally, as shown *supra*, the alleged phone log, even if deemed admissible, is thoroughly unreliable evidence.  This entire situation was, at best, a misunderstanding on the part of Noridian and CMS that could have been easily cleared up if Noridian and/or CMS had exercised any reasonable degree of diligence.  Under the limited evidence CMS had presented, it was legally erroneous to exclude Dr. Foo—a Medicare provider for over 25 years—without further, legitimate inquiry.  If anything, the evidence shows **no** inquiry of any level of seriousness or effort ever took place.

> **E.** **The DAB's Fourth and Fifth Conclusions, i.e., CMS Had Authority and a Legal Basis to Revoke Dr. Foo's Privileges, Was Arbitrary, Capricious, and An Abuse of Discretion and Otherwise Not in Accordance with Law Because They Ratify Prejudicial Errors of Procedure, Including Abuses of Discretion Under and Law and Applicable Regulations**

Even if there were a legal basis for excluding Dr. Foo, which Dr. Foo strongly disputes, the record demonstrates it was nonetheless an abuse of discretion to do so.  The manner in which Dr. Foo conducted his practice, including using a

correspondence address and correspondence telephone number, was expressly

permitted by Medicare policies.  The Medicare Program Integrity Manual (CMS

Pub. 100-08) ("PIM") establishes expressly state that a supplier may establish a

correspondence address, which can be a post office box, that is distinct from any

"practice locations."  *See* PIM, Ch. 15, § 15.5.2.2.A, AR 764; *see also* PIM, Ch.

15, § 15.5.4.  The PIM also makes clear that Medicare practitioners do not need to

have a private office as a practice location.  *See* PIM, Ch. 15, § 15.5.4.3.C.  These

same policies are reflected in the Medicare 855-I application form.  In addition, the

PIM also states that suppliers may establish a "correspondence telephone number,"

which need not link to the correspondence address.  Rather, the correspondence

phone number can be "any telephone number" and should be accepted by the MAC

unless there is reason to suspect it does not actually belong to, or is associated

with, the supplier.  PIM, Ch. 15, § 15.5.2.2, AR 764.

The MAC in this situation easily could, and should, have made efforts to

clarify with Dr. Foo whether 4348 Waialae Avenue was a practice location of his

since it is patently obvious that there is a UPS Store at that address with no

indications whatsoever that it is a physician's office.  Dr. Foo's argument does not

attempt to "inappropriately" shift the burden of compliance away from providers

and impose additional investigational responsibilities on MACs or CMS.  Rather,

Dr. Foo is stating that, under the facts presented by this case, where, even

accepting for the sake of argument that Dr. Foo identified 4348 Waialae Avenue as a practice address (a contention he strongly disputes), the MAC should have followed routine procedures laid out in the PIM for confirming whether a location is operational. Following the PIM procedures would not have required the MAC to undertake any kind of intensive investigation to "find Petitioner's actual practice locations." Rather, it would have been a case of the MAC actually talking to Dr. Foo or someone formally authorized to speak for him and taking note of information already in its files. All of those steps are expressly contemplated by, and set forth in, the PIM. *See*, *e.g*. PIM, Ch. 15, §§15.5.4; 15.7.1.3.2; 15.7.1.4.3.C; and 15.20.1.A.1. Instead, MAC and CMS abruptly shut the door on Dr. Foo's enrollment status, without the on-site investigator ever *entering* the door to the UPS Store location to conduct further inquiry.

4348 Waialae Avenue address aside, CMS and the MAC were privy to ample other information showing that Dr. Foo was operational. Specifically, the record documents that Dr. Foo practices at several medical centers, each of which Dr. Foo clearly lists in Box 32 of the CMS 1500 claim forms he submits to Medicare for payment for services rendered at those locations. CMS has not denied that Dr. Foo's Medicare reimbursement claims clearly identify the sites where he renders services. Indeed, Dr. Foo has always been careful about making plain on his Medicare (and other) claims where services were provided because, as

a specialist in anesthesiology, he does not maintain a private office, but instead provides his services at multiple, institutional locations. *See* Wahl Decl., ¶¶ 3-7, AR 621-622. CMS has not denied that the site of service information on Dr. Foo's claims is accurate and has identified locations other than 4348 Waialae Avenue. The fact that Dr. Foo has been continually submitting claims for services to Medicare during all relevant periods shows that he was, indeed, "operational."

The agency action is inconsistent with the overall intent of the Medicare enrollment regulations and related policies. *See In Re CMS LCD Complaint: Noncovered Services*, DAB Dec. No. 2500 at 5-6 (Mar. 7, 2013) (considering regulatory intent arguments in evaluating case). The Medicare regulations were revamped and made more restrictive in the 2000s in an effort to reduce fraud and keep "bad" providers and suppliers out of the program. The intent of those changes was not to permit contractors to exclude suppliers who have participated in the program successfully for decades based on old provider application from an entirely different company purporting to "fill in" a practice address that does not appear within an entirely blank 2014 CMS application record data field, which is the only logical place for a provider to input a practice location address. This is further evidenced by the other potential reasons for revocation provided for in Section 424.535(a), none of which are present or alleged here: (1) Noncompliance; (2) Provider or supplier conduct; (3) Felonies; (4) False or misleading information;

(6) Grounds related to provider and supplier screening requirements; (7) Misuse of billing number; (8) Abuse of billing privileges; (9) Failure to report; (10) Failure to document or provider CMS access to documentation; (11) Initial Reserve Operating Funds; (12) Medicaid termination; (13) Prescribing authority; (14) Improper prescribing practices. (42 C.F.R. 424.535(a).) Dr. Foo is not the type of "bad" provider that should worry Medicare. Instead, Medicare should be worried about the common sense of its own contractors to obtain reliable evidence to determine whether a provider is operational or not.

Any purported misunderstandings regarding Dr. Foo's missing practice location data could have been easily resolved through, for example, a five-minute-or-less phone call between a contractor representative and Dr. Foo or Mr. Wahl. There is no allegation in this case, nor has Dr. Foo ever been subject to any allegations that he submitted claims to Medicare that included false or misleading information. Dr. Foo has always been fully transparent in the claims he submits to Medicare with respect to the locations where he furnishes services, which are the Hawaiian Eye Center, SurgiCare of Hawaii and Hawaii Endoscopy Centers. They are easily cross-referenced against reimbursement claims by both the surgeon and the facility were the procedure was performed. Dr. Foo thus has not done anything that would or should, trigger the kind of adverse action he has been subject to.

Dr. Foo's exclusion from Medicare was completely without factual or legal basis, and the draconian treatment he has received from CMS and Noridian is utterly contrary to the intent of Medicare enrollment policies.  Not only has Dr. Foo been barred from submitting Medicare reimbursement claims for over two years and incurred substantial loss of income and substantial legal fees to resolve the matter and clear his name, he has been subject to constant risk that his overall reputation as a respected medical practitioner in the community will be irreparably damaged due to his unjustified disenrollment, thereby harming his practice in ways that extend beyond just Medicare participation.  The delegation of laws, regulations and sub-regulatory guidance to a non-governmental entity must be scrutinized closely.  To the extent Noridian had discretion to exclude Dr. Foo at all, the record as a whole demonstrates Dr. Foo's exclusion was an abuse of such discretion.  By affirming such an apparent abuse of discretion, the ALJ's decision and DAB's affirmation of that decision also reflects prejudicial errors of procedure, including abuses of discretion under the law and applicable regulations.

### F. The *Adora* Case Supports Dr. Foo's Claim that the Revocation Was Improper

*Adora Healthcare Services, Inc.*, DAB No 2714 (2016) lends support to Dr. Foo's claim that CMS's revocation was improper because it cited no additional evidence—besides an onsite inspection conducted at the wrong address—that Dr.

Foo had ceased operating altogether.  In *Adora*, CMS revoked a home health agency's Medicare enrollment and billing privileges based on its finding that the agency was not operational during a site visit. *Id.* at 2.  The agency had relocated its practice to a new location and provided CMS with timely notice of its address change.  *Id.*  Nevertheless, CMS claimed it had no record of the provider's notification and revoked its privileges.  *Id.*

The ALJ reversed CMS's revocation concluding that CMS had no legal basis for its action because provider had given CMS the requisite notification of its address change in a timely manner.  *Id.* at 3.  On review, the Appellate Board ("Board") affirmed the ALJ's conclusion but on different grounds.  *Id.* at 4.  The Board deemed CMS's revocation premature because its determination rested solely on the inspector's visit to provider's old address, which occurred during the 90-day grace period provider had to inform CMS of its change of location.  *Id.*

The Board reasoned that CMS was required to make a prima facie showing that the provider was no longer operational, and to do so it needed to point to evidence in the record developed before the ALJ showing that the provider no longer "'had a qualified physical practice location,' and was not 'open to the public for the purposes of providing health care related services . . . prepared to submit valid Medicare claims [or] properly staffed, equipped, or stocked . . . to furnish these items or services.'"  *Id.* at 5 (citing 42 C.F.R. § 424.502).

In *Adora*, the only evidence CMS pointed to was the evidence related to its inspection at the provider's old location of record. The Board concluded that this was insufficient evidence to make a prima facie case, particularly when the undisputed evidence showed that the provider was still operational and still within the 90-day grace period for notifying CMS of the move. *Id.* Indeed, the Board noted that had CMS relied on other evidence indicating that provider was no longer operational at the time of the visit, its decision might have been different. *Id.* at 6.

Here, CMS's revocation decision rested entirely on two outdoor-only "site visits" and a telephone conversation with an alleged unnamed receptionist, rather than Dr. Foo himself or a representative whose name was actually recorded pursuant to information verification recordkeeping guidelines. Accordingly, similar to *Adora*, CMS did not meet its burden of proof to show that Dr. Foo was no longer operational and it was error for the Board to find otherwise.

## V.     CONCLUSION

For the above-referenced reasons, in addition to the entire record in this action incorporated by reference in Docket No. C-16-50, A-16-101, and C-17-378, Dr. Foo's Medicare enrollment revocation should be overturned in its entirety as it was arbitrary, capricious, and abuse of discretion and otherwise not in accordance with the law. Substantial evidence does not exist to support the revocation, and upholding the revocation would be an erroneous and gross injustice.

Dated: June 7, 2019

HOOPER, LUNDY & BOOKMAN, P.C.

By:     /s/ Jennifer A. Hansen
      JENNIFER A. HANSEN
Attorneys for WENDELL FOO, M.D.

CV 18-00490-JAO-WRP

PLAINTIFF'S OPENING BRIEF

## CERTIFICATE OF SERVICE

I hereby certify that, on the date and by the method of service noted below, a

true and correct copy of the foregoing document was served on the following in the

manner set forth below:

### Served Electronically through CM/ECF

KENJI M. PRICE                              Attorneys for Defendant
United States Attorney
District of Hawaii

SYDNEY SPECTOR
Assistant U.S. Attorney
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
Email: Sydney.Spector@usdoj.gov

Executed on June 7, 2019, at San Diego, California.

　　　　　　　　　　　　　　　 /s/ Diane DeCarlo
　　　　　　　　　　　　　　　Diane DeCarlo