KENJI M. PRICE #10523
United States Attorney
District of Hawaii

SYDNEY SPECTOR
Assistant U.S. Attorney
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-3752
Email:  Sydney.Spector@usdoj.gov

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WENDELL FOO, M.D., | CIVIL NO. 18-00490 JAO-WRP |
| Plaintiff, | |
| vs. | DEFENDANT'S ANSWERING BRIEF; CERTIFICATE OF SERVICE |
| ALEX M. AZAR II, Secretary of the U.S. Department of Health and Human Services, in his official capacity, | HRG DATE:  August 30, 2019 TIME: 9:30 a.m. JUDGE: Hon. Jill A. Otake |
| Defendant. | Related Filing:  ECF No. 23 |

DEFENDANT'S ANSWERING BRIEF

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ........................................................................1

II.   STATUTORY AND REGULATORY BACKGROUND .............................3

    A.    Overview of the Medicare program and implementing regulations .....3

    B.    Medicare Integrity Program contractors .............................................3

    C.    Requirements for physicians enrolling in Medicare and maintaining Medicare billing privileges .............................................4

    D.    Revocation of enrollment in the Medicare program ...........................6

    E.    The administrative appeals process .....................................................7

III.  STATEMENT OF FACTS AND ADMINISTRATIVE HISTORY .............7

    A.    Revocation of Plaintiff's enrollment in the Medicare program ...........7

    B.    Plaintiff's appeals to the ALJ and DAB ...........................................10

        1.    ALJ Decision I, DAB No. CR4580 (April 8, 2016) ................11

        2.    The DAB's Remand Decision, DAB Decision I, DAB No. 2769 (February 8, 2017) .........................................13

        3.    The ALJ Decision II, DAB No. CR5003 (January 8, 2018) ....14

        4.    The DAB's Second Decision, DAB Decision II, DAB No. 2904 (October 16, 2018).........................................15

IV.   STANDARD OF REVIEW ........................................................................16

V.    ARGUMENT.................................................................................19

      A.    The Secretary's Final Decision is supported by substantial
            evidence in the record ......................................................19

      B.    The Secretary's conclusions of law were not arbitrary and capricious22

            1.    The Secretary's interpretation of Medicare regulations
                  was not legally erroneous...........................................22

            2.    The Secretary applied the correct legal standard in refusing
                  to require additional investigative steps prior to revocation.....25

      C.    The Secretary properly delegated revocation authority to Noridian...28

      D.    Plaintiff has not been deprived of due process of law ........................28

VI.   CONCLUSION.................................................................................29

# TABLE OF AUTHORITIES

*CASES*                                                              *PAGE(S)*

*Auer v. Robbins,*
  519 U.S. 452 (1997) ........................................................................................18

*Aukland v. Massanari,*
  257 F.3d 1033 (9th Cir. 2001) ........................................................................17

*Bowles v. Seminole Rock & Sand Co.,*
  325 U.S. 410 (1945) ........................................................................................17

*Brown-Hunter v. Colvin,*
  806 F.3d 487 (9th Cir. 2015) ..........................................................................17

*Dist. Mem'l Hosp. of Southwestern N.C., Inc. v. Thompson,*
  364 F.3d 513 (4th Cir. 2004) ..........................................................................18

*Fayad v. Sebelius,*
  803 F. Supp. 2d 699 (E.D. Mich. 2011) ........................................................28

*Fox Insurance Company Inc. v. CMS,*
  715 F.3d 1211 (9th Cir. 2013) ........................................................................29

*Guzman v. Shewry,*
  552 F.3d 941 (9th Cir. 2009) ..........................................................................29

*Hindley v. Dep't of Health & Human Servs.,*
  No. 15-CV-01973-MEJ, 2017 WL 1398257 (N.D. Cal. Apr. 19, 2017) .............19

*Int'l Rehab. Scis. Inc. v. Sebelius,*
  688 F.3d 994 (9th Cir. 2012) ..........................................................................17

*Matney v. Sullivan,*
  981 F.2d 1016 (9th Cir. 1992) ........................................................................17

*Palomar Med. Ctr. v. Sebelius,*
  693 F.3d 1151 (9th Cir. 2012) ................................................................18, 27

*Shah v. Azar,*
  920 F.3d 987 (5th Cir. 2019) ..........................................................................19

*CASES*                                                              *PAGE(S)*

*Short Haul Survival Comm. v. United States,*
   572 F.2d 240 (9th Cir. 1978)........................................................18

*Thomas Jefferson Univ. v. Shalala,*
   512 U.S. 504 (1994) .................................................................18

*Travers v. Shalala,*
   20 F.3d 993 (9th Cir. 1994)......................................................17

*United States. v. Elias,*
   269 F.3d 1003 (9th Cir. 2001)..................................................18

*Valentine v. Comm'r Soc. Sec. Admin.,*
   574 F.3d 685 (9th Cir. 2009)....................................................16

*Villa View Cmty. Hosp., Inc. v. Heckler,*
   720 F.2d 1086 (9th Cir. 1983)..................................................17

*STATUTES*

5 U.S.C. § 706...............................................................................18

42 U.S.C. § 405(g) ..................................................................7, 16

42 U.S.C. § 1302(a) .......................................................................3

42 U.S.C. § 1395, *et seq.*..............................................................3

42 U.S.C. § 1395cc(h)(1)(A) .........................................................7

42 U.S.C. § 1395ddd......................................................................4, 28

*STATUTES*                                                          PAGE(S)

42 U.S.C. §§ 1395kk-1 ...............................................................................................28

42 U.S.C. § 1395x(d) ................................................................................................4

*REGULATIONS*

42 C.F.R. Part 424....................................................................................................5

42 C.F.R. §§ 424.500-570 .........................................................................................3

42 C.F.R. § 424.502 ................................................................................6, 19, 23, 25

42 C.F.R. § 424.505 ..............................................................................................4, 5

42 C.F.R. § 424.510(a) .............................................................................................5

42 C.F.R. § 424.510(d)(2)......................................................................................5, 23

42 C.F.R. § 424.510(d)(2)(i).........................................................................6, 26, 27

42 C.F.R. § 424.510(d)(6).........................................................................................5

42 C.F.R. § 424.510(d)(8).........................................................................................5

42 C.F.R. § 424.515 ................................................................................................12

42 C.F.R. § 424.515(a)(2).................................................................................26, 27

42 C.F.R. § 424.517(a)....................................................................................5, 6, 23

42 C.F.R. § 424.535 ................................................................................................30

42 C.F.R. § 424.535(a)......................................................................................6, 23

| REGULATIONS | PAGE(S) |
|---|---|
| 42 C.F.R. § 424.535(a)(5) | passim |
| 42 C.F.R. § 424.535(a)(5)(i) | 19, 25 |
| 42 C.F.R. § 424.535(c) | 6, 10 |
| 42 C.F.R. § 424.535(g) | 6 |
| 42 C.F.R. Part 498 | 7 |
| 42 C.F.R. § 498.5(f)(2) | 7 |
| 42 C.F.R. § 498.22(b) | 7 |
| 42 C.F.R. § 498.40 | 7 |
| 42 C.F.F. § 498.80 | 7 |
| 42 C.F.R. § 498.90(a)(1) | 7 |
| 46 Fed. Reg. 56911-03 | 3 |
| 73 Fed. Reg. 69726 | 24 |
| 76 Fed. Reg. 5862 | 24 |

Defendant Alex M. Azar II (the "Secretary"), in his capacity as Secretary of the United States Department of Health and Human Services ("HHS"), by and through his attorneys, Kenji M. Price, United States Attorney, and Sydney Spector, Assistant United States Attorney, hereby files its responsive brief and moves this Court for an order granting judgment in favor of the Secretary.

## I.   INTRODUCTION

Plaintiff Wendell Foo, M.D. ("Plaintiff") appeals the Secretary's two-year revocation of his Medicare enrollment and billing privileges.  Plaintiff's billing privileges were revoked for failure to comply with mandatory enrollment standards.  Specifically, Plaintiff failed to provide an accurate physical practice location on his Medicare enrollment forms; instead Plaintiff listed a United Parcel Service ("UPS") store as his physical practice location (separate from, and in addition to, listing the UPS store as his correspondence address).

As discussed below, and as held by the Administrative Law Judge ("ALJ") and the Appellate Division of the HHS Departmental Appeals Board ("DAB"), the applicable Medicare regulations permit revocation under such conditions.  Further, the Secretary has an important interest in enforcing these regulations that ensure that information reported to Medicare by suppliers is true, accurate, and complete, in order to prevent fraud and maintain the integrity of the Medicare program.

Plaintiff attempts to muddy the waters by repeatedly mischaracterizing the ALJ's and DAB's findings. For example, Plaintiff's repeated assertion – that he was found "operational" at other locations than the one on his Medicare enrollment record – runs directly contrary to the Secretary's express holding that "operational" is a defined term that applies only to the qualified practice location listed in the one's enrollment record.

Further, Plaintiff tellingly omits key pieces of evidence that the ALJ and DAB relied on in determining that the enrollment records presented by the Centers for Medicare and Medicaid Services ("CMS") were reliable and established that Plaintiff had provided the address of a UPS Store as his physical practice location. For example, Plaintiff makes no mention of the letter he received, which expressly confirmed his change of physical practice location to the UPS Store address.

Moreover, Plaintiff ignores the highly deferential standard of review that is appropriate in the instant proceeding. It is well established that a district court's review of the Secretary's decision must be upheld, so long as the record, as a whole, contains substantial evidence to support the Secretary's findings of fact and the Secretary applied the correct legal standard. Substantial evidence exists if a reasonable mind may accept it as adequate to support a conclusion. Further, an agency's interpretations of its own regulatory scheme is to be given great deference.

Here, the 26-page final decision by the Secretary affirming the revocation of Plaintiff's Medicare enrollment and billing privileges – for failure to comply with mandatory enrollment standards – is supported by substantial evidence in the administrative record as a whole and legally sound.

## II.     STATUTORY AND REGULATORY BACKGROUND

### A.     Overview of the Medicare program and implementing regulations

The Medicare program, established by Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395ccc (the Medicare Act), provides health insurance benefits to individuals over age 65 and to certain disabled persons.  It does so by reimbursing providers and suppliers that provide services or supplies to those individuals.  Congress has granted the Secretary of HHS broad authority to issue regulations relating to the administration of the Medicare program.  *See* 42 U.S.C. § 1302(a).  CMS is the component of HHS that administers the Medicare program on behalf of the Secretary.  *See* 46 Fed. Reg. 56911-03, 56911 (Nov. 19, 1981). This case involves Part B of the Medicare program, and its regulations governing the requirements for "suppliers," such as physicians, to establish and maintain Medicare billing privileges.  *See* 42 C.F.R. §§ 424.500-570.

### B.     Medicare Integrity Program contractors

As part of the Congressionally-created Medicare Integrity Program, the Secretary enters into contracts with private entities to engage in a variety of

activities, including the "[r]eview of activities of providers of services or other individuals and entities furnishing items and services for which payment may be made" under the Medicare Program. 42 U.S.C. § 1395ddd(a)-(b). CMS delegates certain program integrity functions to Medicare contractors, among them Noridian Healthcare Solutions ("Noridian"). Noridian is the contractor that performed the Medicare Integrity Program functions relating to Plaintiff. Noridian also subcontracts with companies to perform onsite inspections of Medicare suppliers and potential suppliers to verify compliance with the federal Medicare enrollment requirements applicable to such suppliers.

### C. Requirements for physicians enrolling in Medicare and maintaining Medicare billing privileges

To receive payment for items and services rendered to Medicare-eligible beneficiaries, eligible "providers" and "suppliers"[1] must be enrolled in the Medicare program and issued a Medicare billing number. *See* 42 U.S.C. § 424.505 ("Basic enrollment requirement").

The authorized form for a physician to submit enrollment information (whether it be applying for initial enrollment or making a change to enrollment information) to Medicare is Form CMS-855I or its online equivalent, the Provider

---

[1] "Suppliers" include physicians, such as Plaintiff. 42 U.S.C. § 1395x(d).

4

Enrollment, Chain and Ownership System ("PECOS"). *See* AR 692-719; 42

C.F.R. § 424.510(a). Both the paper application and PECOS require the same

information. In reporting enrollment information, the applicant is required to

certify that all information provided is true, complete and accurate, and that the

applicant agrees to report any changes in enrollment information within a specific

time frame. AR 717-18; 42 C.F.R. § 424.510(d)(2). CMS uses the PECOS

internet-based system to maintain the Medicare enrollment data for suppliers, such

as Plaintiff. AR 722.

Once enrolled, a supplier has "billing privileges" — that is, the right to

claim and receive Medicare payment for services provided to Medicare

beneficiaries. 42 C.F.R. § 424.505. The regulations in 42 C.F.R. Part 424, subpart

P set out the requirements for establishing and maintaining Medicare billing

privileges. Section 424.510(d)(6) states that a supplier "must be operational to

furnish Medicare covered items or services . . . ." CMS is authorized to perform

onsite review of a supplier to verify the information a supplier has submitted in an

enrollment application and determine compliance with Medicare enrollment

requirements. 42 C.F.R. § 424.510(d)(8); 42 C.F.R. § 424.517(a). CMS may use

the results of an onsite review to support a decision to revoke a supplier's

enrollment. *Id*.

### D. Revocation of enrollment in the Medicare program

CMS is authorized to revoke a supplier's Medicare enrollment for any of the reasons set forth in 42 C.F.R. § 424.535(a). In relevant part, the regulation provides that "CMS may revoke" a supplier's Medicare enrollment when CMS determines "[u]pon on-site review" that the provider is "[n]o longer operational to furnish Medicare covered items or services . . . ." 42 C.F.R. § 424.535(a)(5). The term "operational" means, amongst other things, that the supplier has a "qualified physical practice location."[2] *See* 42 C.F.R. § 424.502.

Revocation becomes effective 30 days after the CMS contractor mails notice of its determination to the provider or supplier, except in certain circumstances not applicable here. *See* 42 C.F.R. § 424.535(g). After a provider or supplier has had its billing privileges revoked, it is barred from participating in the Medicare program from the effective date of the revocation until the end of the re-enrollment bar, which can be between one to three years. *See* 42 C.F.R. § 424.535(c).

---

[2] The enrollment and revalidation applications require a supplier to provide his or her physical practice locations. AR 707-08 (requiring the address for each practice location where services are rendered and specifically stating that a P.O. Box is not permitted); 42 C.F.R. § 424.510(d)(2)(ii) (requiring a supplier to provide documentation of its "practice location" with its enrollment application). Additionally, the regulations permit CMS to perform "on-site inspections" to verify that enrollment information is accurate and in compliance. 42 C.F.R. § 424.517(a). Thus, CMS inspects the "qualified physical practice location" provided by the supplier and on file with CMS. AR 42.

### E. The administrative appeals process

The appeal procedures for initial determinations that affect a supplier's participation in the Medicare program – such as revocation of billing privileges – are set forth at 42 C.F.R. Part 498. A supplier may first appeal the initial determination by requesting reconsideration from the designated Medicare contractor within 60 days of receiving notice of the initial determination. 42 C.F.R. § 498.22(b). If dissatisfied with the reconsideration decision, a supplier is then entitled to a *de novo* review of the initial determination before an ALJ. *Id.* § 498.40. A supplier may subsequently appeal the ALJ's decision to the appellate division of the HHS Departmental Appeals Board ("DAB"). *Id.* § 498.80. The decision of the DAB constitutes the Secretary's "final decision," which is subject to judicial review. *See* 42 C.F.R. §§ 498.90(a)(1); 498.5(f)(2). Judicial review of the Secretary's "final decision" lies in the United States District Court, as provided in 42 U.S.C. § 405(g) (incorporated by reference in 42 U.S.C. § 1395cc(h)(1)(A)).

## III. STATEMENT OF FACTS AND ADMINISTRATIVE HISTORY

### A. Revocation of Plaintiff's enrollment in the Medicare program

In February 2010, Plaintiff submitted a Medicare enrollment application, requesting revalidation. AR 682-84. In the application, Plaintiff updated his physical location to 4348 Waialae Avenue, Suite 5-311, Honolulu, Hawaii 96816-5767 ("4348 Waialae Avenue"), and identified that address as his "Private

Practice." AR 683. Plaintiff also listed, in a separate section, that 4348 Waialae Avenue was his "correspondence address." AR 682. The Form CMS-855I clearly states that the practice locations provided in "Section 4" must be the physical locations where services are rendered. AR 707-08 (providing instructions on completion, and requiring that the physician identify each location provided as a certain type of health care facility). The section for listing a "correspondence mailing address" (Section 2) is totally separate from the section which requires listing of practice locations. *Compare* AR 697 *with* AR 708. Further, physicians are afforded an opportunity, in Section 4H, to explain any unique circumstances concerning their practice locations. AR 711.

In a letter, dated March 4, 2010, Palmetto GBA (the CMS Medicare contractor then assigned to Plaintiff's jurisdiction) confirmed that Plaintiff's Medicare enrollment record had been updated to include 4348 Waialae Avenue as Plaintiff's physical practice location, as well as the address where Plaintiff would receive notices and payments. AR 679-80, 710.

On May 14, 2014, Plaintiff submitted another Medicare enrollment application requesting revalidation. AR 677-78. Plaintiff certified that all information contained in the application was true. AR 678. When completing a revalidation application via PECOS, if the provider makes no changes to the information already in the enrollment record in PECOS, then the application data

8

report will display "no current records exist" for that section. *See e.g.* AR 678, 690-91. As the May 14, 2014 application data report displays "no current records exist," Plaintiff did not update the February 2010 application listing of 4348 Waialae Avenue as his physical location of his private practice. On June 24, 2014, a Medicare contractor called 808-373-4007 (the number provided in Plaintiff's enrollment application) and confirmed that 4348 Waialae Avenue was Plaintiff's practice location.[3] AR 676-78; 731-37; *see also* AR App'x C, Hoffman Hearing Tr. at 46:16-18.

An on-site inspection was ordered, and Noridian gave the inspector Plaintiff's physical practice address that CMS had on file – 4348 Waialae Avenue. *See* AR App'x C, Finnegan Hearing Tr. at 80:16-22, 116:13-21, 117:10-15.

On-site verification surveys conducted on March 5, 2015 and May 8, 2015 revealed that Plaintiff's reported practice location of 4348 Waialae Avenue was, in fact, a UPS store and not an "operational" qualified practice location. AR 672-75.

In a letter, dated June 24, 2015, Noridian notified Plaintiff that his Medicare billing privileges would be revoked, effective March 5, 2015, pursuant to 42 C.F.R. § 424.535(a)(5), as Plaintiff failed to have a valid practice location. AR

---

[3] The ALJ and DAB ultimately did not rely on the call in reaching their ultimate determination that revocation was proper. AR 65, 33. Plaintiff, however, inexplicably repeatedly asserts otherwise. *E.g.,* Opening Br. at 21-23.

9

670-71. The June 24, 2015 letter further notified Plaintiff that, pursuant to 42 C.F.R. § 424.535(c), he would be barred for two years from re-enrolling in the Medicare program and that he had a right to request reconsideration. AR 671.

Via letter dated July 3, 2015, Plaintiff submitted his request for reconsideration. AR 660-69. Plaintiff claimed that the on-site reviewers "mistook" his mailing address as his physical practice location, and that claims for payment that he submitted to Medicare have accurate physical practice locations. AR 660.

On or around July 18, 2015, Plaintiff attempted to update PECOS with his accurate practice locations. AR 723-24. Plaintiff's enrollment record, however, did not reflect the update because Plaintiff's Medicare enrollment was already in revoked status. AR 724.

On August 27, 2015, CMS ruled unfavorably on Plaintiff's request for reconsideration because the address provided by Plaintiff in his Medicare enrollment application, at the time of the on-site survey, was a UPS store address and not a valid practice location. AR 650-52.

## B.     Plaintiff's appeals to the ALJ and DAB

Plaintiff filed an appeal of CMS's decision. An ALJ affirmed CMS's revocation. Plaintiff appealed that decision to the DAB, which remanded the matter to the ALJ to clarify and address certain issues. In accordance with the

DAB decision, the ALJ issued a decision, again affirming CMS's revocation. Plaintiff again appealed. The DAB then issued the final decision upholding the ALJ's decision (affirming that CMS's revocation of Plaintiff's Medicare enrollment and billing privileges).

### 1. ALJ Decision I, DAB No. CR4580 (April 8, 2016)

On April 8, 2016, after receiving briefs, supporting documents, and written testimony from both parties, an ALJ issued a decision ("ALJ Decision I"), affirming CMS's revocation of Plaintiff's Medicare enrollment and billing privileges, because Plaintiff was not "operational" at the practice location on file with CMS, as required by 42 C.F.R. § 535(a)(5). AR 1-10. Despite Plaintiff's argument that the 4348 Waialae Avenue address was solely his correspondence address, the ALJ found that the evidence in the record established that the practice location information CMS had on file at the time of the on-site inspection was 4348 Waialae Avenue. AR 5-7. Such evidence included, amongst other things, PECOS enrollment data, written testimony submitted by the parties, and a phone log reflecting verification of Plaintiff's physical practice location. AR 5-7.

The ALJ was not persuaded by Plaintiff's assertion that he saw patients at locations that were listed in his revalidation application as "record storage locations." The ALJ held that the proper focus was on the address listed as Plaintiff's physical practice location (not record storage locations). Because it was

11

undisputed that Plaintiff was not "operational" at the UPS Store location on file with CMS as the physical practice location, a legal basis for revocation existed. AR 7.

The ALJ similarly rejected Plaintiff's argument that CMS or its contractor lacked authority to revoke his Medicare enrollment and billing privileges. AR 8-9. After noting that her jurisdiction was limited to deciding whether CMS had a legal basis for its revocation of Plaintiff's enrollment, the ALJ stated that she was "not required to assess whether CMS could have made additional efforts to identify Plaintiff's practice location and Plaintiff has not cited any authority showing CMS had such an obligation." AR 8-9. The ALJ also noted the policy considerations at issue – such as reducing fraud – and the rationale for putting the burden on a physician to correctly provide his or her address when completing applications for enrollment and revalidation. AR 9.

Finally, the ALJ disagreed with Plaintiff's assertion that CMS impermissibly introduced evidence from his 2010 enrollment application. AR 9-10. The ALJ noted that Plaintiff's revocation appeal was based on the May 2014 revalidation enrollment application, which required the supplier to resubmit and recertify the accuracy of its enrollment information according to the regulatory requirements at 42 C.F.R. § 424.515. Therefore the revalidation process required CMS's

contractor to verify the accuracy of the information on file if, as is the case here, Plaintiff did not provide new information at the time of revalidation.  AR 9-10.

### 2. The DAB's Remand Decision, DAB Decision I, DAB No. 2769 (February 8, 2017)

Plaintiff appealed ALJ Decision I to the DAB, raising multiple errors of law and fact, and sought oral argument.  AR 182-205.

In its February 8, 2017 decision (DAB No. 2769), the DAB vacated ALJ Decision I and remanded the case to the ALJ to provide Plaintiff an opportunity to cross-examine the Noridian employee about the phone log (AR 676), or to affirmatively rule on the objection to the phone log as hearsay.  AR 11-27.  The DAB's remand decision further noted that, on remand, the ALJ should address Plaintiff's concern about how CMS's electronic system – PECOS – retains enrollment data.  AR at 22-23.

The DAB upheld other aspects of the ALJ's decision, including the admission of evidence concerning Plaintiff's 2010 revalidation application.  AR 20-21 ("The evidence related to the 2010 revalidation is relevant to the question of how CMS came to have Waialae Ave. as Plaintiff's practice location of record as the evidence related to the 2014 revalidation is.").

### 3.    The ALJ Decision II, DAB No. CR5003 (January 8, 2018)

On remand, the ALJ directed the parties to submit additional evidence and written arguments, along with any request for cross-examination of any witness. AR 335-36.  A telephonic hearing was held, in which CMS presented witness testimony from two Noridian employees and Plaintiff was given the opportunity to cross-examine the witness.  *See, generally,* AR App'x C.

The ALJ again held that CMS had a legal basis to revoke Plaintiff's Medicare enrollment and billing privileges, pursuant to 42 C.F.R. § 424.535(a)(5), and that CMS or its contractor had the authority to take such action.  AR 41-43. Specifically, the ALJ held that CMS had established the reliability of the PECOS records.  AR 37-40.  In reaching this finding, the ALJ looked to the testimony given by the Noridian project analyst, which further explained PECOS's data reporting (thereby clarifying the supposed inconsistencies identified by Plaintiff), and addressed how the PECOS records reflect that Plaintiff's May 2014 application did not change his physical practice location from the UPS store address that was on record with CMS.  As to the disputed call log, the ALJ ruled that the call log was admissible – but specifically noted that she did not rely on the log in her ultimate decision.  AR 32-33.  As to Plaintiff's claim that his physical practice locations were accurately listed on claim forms that he submitted for payment, the ALJ explained that such claim forms are not enrollment documents,

and CMS is not required to undertake any affirmative investigation to determine the actual practice location, when it learns of an inappropriate practice location. AR 43-45.

Plaintiff appealed ALJ Decision II to the DAB. *See* AR 526-66.

### 4. The DAB's Second Decision, DAB Decision II, DAB No. 2904 (October 16, 2018)

In the second DAB decision ("DAB Decision II") – the Secretary's final decision – the DAB upheld the determination that Plaintiff was properly revoked, as he was not "operational" at the practice address location on file with CMS, in violation of 42 C.F.R. § 424.535(a)(5). AR 46-71.

Plaintiff had repeated his previous arguments that: CMS failed to follow procedures by not affirmatively investigating to determine his actual practice location before revoking his enrollment; substantial evidence did not support the determination that 4348 Waialae Avenue was his practice location of record; and, PECOS records could not be relied upon to provide information about his practice location of record. AR 526-44.

DAB Decision II analyzed and rejected each of Plaintiff's arguments, noting that the documentary and testimonial evidence supported CMS's determination that the practice location on file with CMS at the time of the attempted site visits was 4348 Waialae Avenue, and that Plaintiff had shown no basis to reject the

evidence.  AR 60-62.  As it was undisputed that the 4348 Waialae Avenue address was a UPS Store and not a "qualified practice location," CMS had the authority to revoke Plaintiff's enrollment on that basis.   The DAB also noted that the ALJ's analysis and resolution of the DAB's previously stated concerns regarding PECOS's record management and retention were free from legal error.  AR 62-65. The DAB also highlighted that, while Plaintiff reiterated his concerns about the PECOS records' reliability, he failed to allege any specific error in the ALJ's discussion resolving those issues.  AR 65.  The DAB also rejected the argument that CMS was required to investigate Plaintiff's actual practice location, either by additional outreach or searching submitted claims forms, prior to revoking his enrollment.  AR 68-69.

On December 14, 2018, Plaintiff filed his Complaint, requesting judicial review of the Secretary's final decision.

## IV.    STANDARD OF REVIEW

Review pursuant to Section 405(g) is "highly deferential."  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  The Secretary's decision should be upheld, so long as (1) the record, as a whole, contains substantial evidence to support the Secretary's findings of fact and (2) the Secretary applied the correct legal standard.  42 U.S.C. § 405(g) ("The findings of the [Secretary] as to any fact, if supported by substantial evidence, shall be

conclusive . . . ."); *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); *Travers v. Shalala*, 20 F.3d 993, 996 (9th Cir. 1994) ("The Secretary's findings must be affirmed if they are supported by substantial evidence.").

Substantial evidence is "more than a mere scintilla, but less than a preponderance," *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001), and is "such that a reasonable mind may accept it as adequate to support a conclusion." *Travers*, 20 F.3d at 996 (internal quotations omitted). The Secretary's decision, for example, must be affirmed "even if it is possible to draw two inconsistent conclusions from the evidence." *Villa View Cmty. Hosp., Inc. v. Heckler*, 720 F.2d 1086, 1090-91 (9th Cir. 1983). Similarly, "[i]f the evidence can support either outcome, the court may not substitute its judgment for that of the [agency factfinder].'" *Aukland*, 257 F.3d at 1035 (*quoting Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The Secretary's conclusions of law will be affirmed unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See Int'l Rehab. Scis. Inc. v. Sebelius*, 688 F.3d 994, 1000 (9th Cir. 2012) (addressing challenge to Secretary's final decision denying coverage of service for purposes of Medicare reimbursement).

In addition, an agency's view of its own regulations must be afforded "controlling weight unless [that view] is plainly erroneous or inconsistent with the regulations." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945); *see*

*also Auer v. Robbins*, 519 U.S. 452, 461 (1997).  The federal courts have recognized the special importance of that deference where the Secretary's interpretation of the complex Medicare regulations is concerned:

> [D]eference to the Secretary's interpretations of Medicare regulations is "all the more warranted," because Medicare "'is a complex and highly technical regulatory program,' in which the identification and classification of relevant 'criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.'"

*Dist. Mem'l Hosp. of Southwestern N.C., Inc. v. Thompson*, 364 F.3d 513, 518 (4th Cir. 2004) (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)); *Palomar Med. Ctr. v. Sebelius*, 693 F.3d 1151, 1159 (9th Cir. 2012) ("We give 'substantial deference' to the Secretary's interpretation of Medicare regulations.")

Because an agency's action is presumed valid, the burden is upon the party challenging the agency's action to show that it is arbitrary and capricious and not upon the agency to show that the action is not arbitrary and capricious.  *Short Haul Survival Comm. v. United States*, 572 F.2d 240, 244 (9th Cir. 1978).  Thus, if an agency's interpretation "is reasonable, [the court] must defer to the agency's interpretation, even if [the court] would have reached a different result had we construe the statute initially."[4]  *United States. v. Elias*, 269 F.3d 1003, 1010 (9th Cir. 2001).

───────────────────

[4] Plaintiff claims that the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, governs the standard of review.  Opening Br. At 10-11.  Courts in the Ninth Circuit

18

## V.    ARGUMENT

### A.    The Secretary's Final Decision is supported by substantial evidence in the record

Substantial evidence supports the finding that Plaintiff did not provide a valid physical practice location in his Medicare enrollment file at the time of the on-site inspection, and that CMS was authorized to revoke Plaintiff's Medicare enrollment and billing privileges in accordance with the relevant Medicare regulations.

CMS may revoke a supplier if, upon an on-site review or other reliable evidence, CMS determines that the supplier is "[n]o longer *operational* to furnish Medicare-covered items or services." 42 C.F.R. § 424.535(a)(5)(i) (emphasis added). Operational means that a supplier has "*a qualified physical practice location*, is open to the public for the purpose of providing health care related services, is prepared to submit valid Medicare claims, and is properly staffed, equipped, and stocked." 42 C.F.R. § 424.502 (emphasis added).

---

have generally applied section 405(g) to similar appeals. *E.g. Hindley v. Dep't of Health & Human Servs.*, No. 15-CV-01973-MEJ, 2017 WL 1398257, at *4 (N.D. Cal. Apr. 19, 2017). Note, however, that a recent case in a different circuit suggests that there is not much of a difference between the two standards. *Shah v. Azar*, 920 F.3d 987, 991 (5th Cir. 2019).

Here, it is undisputed that CMS conducted on-site reviews. *See* AR 672-675. Further it is undisputed that 4348 Waialae Avenue is not a "qualified physical practice location" – rather, it is a UPS Store. *See, e.g.,* 673-75.

Instead, Plaintiff argues that 4348 Waialae Avenue was not listed in the PECOS enrollment system as his physical practice location at the time of the March 2015 on-site review. However, the evidence clearly supports such a finding. *See* AR 679-80, 683.

First, it is undisputed that, in March 2010, the Waialae Avenue address was listed in PECOS as Plaintiff's physical practice location (Section 4 of the Form CMS-855). *See* AR 679-80, 683. Plaintiff has never denied receipt of the March 2010 notice (AR 679-80) in which the Medicare contractor expressly confirmed that Plaintiff's physical practice location had been changed to 4348 Waialae Avenue. Nor has Plaintiff ever alleged that he contacted the Medicare contractor after receipt of the March 2010 notice to correct the practice location information. *See* Compl.; AR 72-83, 143-73, 182-205, 275-96, 375-92, 419-34, 488-98, 503-11, 526-44.

Second, testimonial and documentary evidence submitted by CMS clearly supports that Plaintiff did not change his physical practice location on the Form CMS-855 during his 2014 enrollment application for revalidation. The practice location section of Plaintiff's 2014 application provides that "no current records

20

exist," and credible testimony from a Noridian program analyst, Cherie Finneman, explained that "no current records exist" is used when a supplier's information for that field is unchanged from their previous application. AR 677, 690-92; *see also* AR 35-40, 63. Thus, substantial evidence supports finding that 4348 Waialae Avenue was listed at Plaintiff's physical practice location at the time of the on-site inspection that gave rise to the revocation.[5]

In addition to the record providing substantial evidence to support the Secretary's finding that Plaintiff provided 4348 Waialae Avenue as his physical practice location in his revalidation applications submitted in February 2010 and May 2014, Plaintiff tellingly has never alleged that he correctly listed his physical practice locations in Section 4 of his Form CMS-855I revalidation applications, nor has Plaintiff has ever submitted credible evidence demonstrating that the practice location provided to Noridian in 2014 and Palmetto in 2010 was anything other than 4348 Waialae Avenue.[6] *See* AR 610-649; 660-669.

---

[5] Plaintiff's attempts to undermine the Nordian employee's explanation for "no records exist," *e.g.*, Opening Br. 19-20, are the exact arguments that were the subject of the DAB's initial remand to the ALJ. AR 53-54. Plaintiff was given the opportunity to cross-examine the Noridian employee, and Plaintiff's arguments were expressly considered, at length, and discounted in the ALJ Decision II and DAB Decision II. AR 62-65. Additionally, despite Plaintiff's extensive focus on the phone log, the ALJ Decision II found that the phone log was minimally relevant and did not rely on it in finding CMS's revocation appropriate. AR 33. The DAB Decision II also concluded that revocation was proper based on other evidence than the phone log. AR 65.

[6] Plaintiff did submit into evidence a self-serving declaration from Plaintiff's son, in which the son claims to "not recall" identifying 4348 Waialae Avenue as a practice location, and claims to recall typing in proper physical address locations.

As the foregoing demonstrates, the record contains substantial evidence that Plaintiff was not "operational" at the practice location on file, as required by 42 C.F.R. § 424.535(a)(5).

## B.     The Secretary's conclusions of law were not arbitrary and capricious

The arguments raised by Plaintiff were all extensively briefed, analyzed, and rejected by CMS, two ALJ decisions and two DAB decisions.  The final decision of the Secretary did not err in determining that CMS was authorized to revoke Plaintiff's Medicare billing privileges, since Plaintiff was not "operational" at the 4348 Waialae Avenue practice location on file with CMS.

### 1.     The Secretary's interpretation of Medicare regulations was not legally erroneous

The Secretary's interpretation of Medicare regulations which authorized the revocation of Plaintiff's Medicare enrollment and billing privileges is afforded high deference and is not legally erroneous.  CMS has authority to revoke a supplier's enrollment for any of the "reasons" in 42 C.F.R. § 424.535(a). Relevant here, section 424.535(a)(5) states:

> On-site review. Upon on-site review or other reliable evidence, CMS determines that the provider or supplier is either of the following:

AR 625.  Plaintiff, however, did not rely on such evidence and moreover, it does nothing to undermine the significant evidence in favor of finding that 4348 Waialae Avenue was listed as the physical practice location.

(i) No longer *operational* to furnish Medicare-covered items or services.
(ii) Otherwise fails to satisfy any Medicare enrollment requirement.

42 C.F.R. § 424.535(a)(5) (emphasis added).

As discussed in the Secretary's final decision, "operational" is defined in 42 C.F.R. § 424.502 as requiring, in relevant part, the provider to have a "qualified physical practice location." Section 424.510(d)(2), in turn, requires the applicant to provide "[c]omplete, accurate and truthful responses to all information requested within each section [of the enrollment application] as applicable to the provider or supplier type" (which may include the "practice location"). And Section 424.517(a) states that CMS may perform on-site inspections to verify that the enrollment information is accurate and to determine compliance with Medicare requirements. Read together, these regulations are rationally interpreted to permit CMS to inspect the "qualified physical practice location" provided by the supplier in connection with his or her Medicare enrollment, and revoke enrollment pursuant to Section 424.535(a)(5) if a supplier is not "operational" at that practice location. *See* AR 66.

The DAB Decision II cited the DAB's previous decisions, which have repeatedly held that the above Medicare regulations require that a supplier or provider be "operational" at the address reported as the practice location on

enrollment applications.  AR 66; 76 Fed. Reg. 5862, 5870 (Feb. 2, 2011) ("[T]he

primary purpose of an unannounced and unscheduled site visit is to ensure that a

provider or supplier is operational at the practice location found on the Medicare

enrollment application.").  Further, DAB Decision II cited previous decisions in

which the DAB has repeatedly upheld revocation where an on-site survey of the

supplier's practice location of record revealed that the supplier was not operational

at that location.[7]

The DAB's interpretation is supported by the preamble to regulations

affecting the effective date of revocations, which  states that, when a provider or

supplier "is no longer operating *at the practice location provided to Medicare on a

paper or electronic Medicare enrollment application*" then "the revocation should

be effective with the date that CMS or our contractor determines that the provider

or supplier is no longer operating *at the practice location*" that was "provided to

Medicare on a paper or electronic Medicare enrollment application[.]"  73 Fed.

Reg. 69726, 69865 (Nov. 19, 2008) (italics added); AR 67.

---

[7] Plaintiff's reliance on one DAB decision, *Adora Healthcare Servs., Inc.,* DAB No. 2714 (2016), Opening Br. at 31-32, is inapposite.  In that case, the supplier presented credible evidence that it had properly notified CMS of its updated physical practice location within the time frame permitted by the regulations.  Thus, it was premature to revoke Plaintiff for failing to update his practice location. The DAB's subsequent decision in the case, DAB No. 2017-4, makes clear the limited nature of its holding and specifically differentiates cases like Plaintiff's where a supplier did not effectively inform the contractor of its practice location.  Here, there is no credible evidence that Plaintiff timely provided his actual practice location.

24

Plaintiff's assertion that his Medicare enrollment cannot be revoked if he is operational at a location not listed as his practice location in CMS's records is based on the flawed premise that a Medicare supplier can be "operational," as the term is defined in the regulations at 42 C.F.R. § 424.502, at some location other than its qualified physical practice location(s) on file with CMS (or CMS's contractor) at the time of the site visit. This view is wholly unsupported by the applicable Medicare regulations. In determining whether CMS had a basis to revoke his Medicare enrollment and billing privileges, the fact that Plaintiff may have been supplying services to Medicare beneficiaries from a practice location not listed in his Medicare enrollment record is immaterial. Only whether Plaintiff was "operational" at the practice location listed in his enrollment record as defined by the regulation was material to the review of his revocation under subsection 424.535(a)(5)(i).

### 2. The Secretary applied the correct legal standard in refusing to require additional investigative steps prior to revocation

The Secretary correctly interpreted its own regulations in rejecting Plaintiff's argument that CMS was required to conduct an affirmative investigation to determine Plaintiff's actual practice locations, when the practice location Plaintiff

provided in his enrollment application was not "operational."[8]  *See* Opening Br. at 25.

The Medicare enrollment requirements specifically require the supplier to submit all relevant information, including a valid practice location as defined by the regulations, on the required CMS Medicare enrollment form.  *See* 42 C.F.R. §§ 424.510(d)(2)(i), 424.515(a)(2).  Plaintiff has identified no regulation or CMS guidance that shifts the burden to Medicare contractors or CMS to determine a supplier's actual physical practice location.

The DAB correctly noted that the practical reality of Plaintiff's position is simply untenable for a program covering over half a million physicians and their practice locations.  *See* AR 71; *see also* AR 69 (rejecting Plaintiff's content that he should be able to update his enrollment information by submitting a claim form, when hundreds or thousands of claim forms are submitted, and there is a specific form – CMS-855I – is required for updating enrollment information).   The

---

[8] In making this argument  - that CMS should have been able to glean his actual practice locations from claims or other items he submitted or should have been required to take additional investigative steps – Plaintiff's Opening brief repeatedly misstates the record.  For instance, Plaintiff repeatedly states that he was found "operational" at other locations than those this in his enrollment profile.  *E.g.*, Compl. ¶¶ 4, 6.  This finding was never made.  To the contrary, the Secretary held that "operational" refers specifically to the practice location in Plaintiff's Medicare enrollment file.  AR 69.  Additionally, Plaintiff clearly attempts to be misleading in stating that "the PECOS record undisputedly only lists the Waialae Ave. address as a correspondence address," Opening Br. at 25.  To the contrary, documentary and testimonial evidence shows that the PECOS information from 2014 and 2010 must be read together and Waialae Avenue was listed as both the mailing address and private practice address.  *E.g.,* AR 65, 690-91.

applicable regulations recognize that, CMS must be able to rely on the accuracy of enrollment information reported by suppliers, and hold the supplier responsible for accurately reporting and updating enrollment information. AR 71 (citing 42 C.F.R. §§ 424.510(d)(2)(i), 424.515(a)(2)).

It follows, that Plaintiff's arguments – that CMS should have been able to glean his actual physical practice locations or should not be able to revoke him solely based on his provision of an incorrect physical practice location on his enrollment record – are without basis. Although CMS may have discretion as to how to use its revocation authority, it is not required to take the additional steps suggested by Plaintiff.

Here, as detailed above and reflected in the administrative record, Plaintiff did not have a "qualified physical practice location" listed in his enrollment record, as required by section 424.535(a)(5). CMS was therefore authorized to revoke his Medicare enrollment corresponding billing privileges, and the DAB was correct to uphold the revocation. *See Palomar Med. Ctr*, 693 F.3d at 1159 (recognizing the "substantial deference" given to the Secretary's interpretation of Medicare regulations).

### C. The Secretary properly delegated revocation authority to Noridian

Plaintiff's Opening Brief contends – without citing any legal authority whatsoever – that Noridian (as a private contractor) acted without authority and in violation of the Constitution when it revoked Plaintiff's Medicare billing and enrollment privileges. Opening Br. at 24. To the contrary, the Medicare statute itself explicitly permits the Secretary to enter into contract with private entities to administer the Medicare program, including program integrity functions such as evaluating whether suppliers remain eligible for access payments from Medicare. *See* 42 U.S.C. §§ 1395kk-1, 1395ddd; *see also Fayad v. Sebelius*, 803 F. Supp. 2d 699, 705 (E.D. Mich. 2011).

Further, it should be noted that, although Noridian issued the initial determination to revoke Plaintiff's enrollment and billing privileges, throughout the appeal process, CMS has elected to proceed with the revocation. Thus, it is currently CMS's exercise of discretion at issue – not the contractor's.

### D. Plaintiff has not been deprived of due process of law

Although Plaintiff's Complaint attempts to allege a due process violation, Compl. ¶¶ 45-46, Plaintiff appears to abandon the claim as it is not address in his Opening Brief. Moreover, the case law is clear that the two-year revocation of Plaintiff's Medicare enrollment and the subsequent appeals process do not violate

the due process protections of the Fifth Amendment. *E.g., Guzman v. Shewry*, 552 F.3d 941, 953-54 (9th Cir. 2009) (no property or liberty interest at stake where physician temporarily banned from participating in Medi-Cal); *Fox Insurance Company Inc. v. CMS*, 715 F.3d 1211, 1233 (9th Cir. 2013) (even if provider had a property interest in a Medicare Part D contract, due process was satisfied when "CMS notified it of the complaints about its performance, completed an on-site audit, and conducted an administrative hearing which reviewed the termination decision").

## VI. CONCLUSION

The "substantial evidence" standard requires that the Secretary's decision be upheld unless the evidence presented would *compel* a reasonable finder of fact to reach a contrary result. Further, the Secretary's interpretation of the Medicare regulatory scheme are afforded great deference.

Here, the determination to revoke Plaintiff's Medicare billing privileges was based on a reasonable interpretation of 42 C.F.R. § 424.535(a) and other relevant regulations, and is supported by substantial evidence in the administrative record as a whole.

Accordingly, the Secretary respectfully requests that the Court find in favor of the Secretary.

Respectfully submitted this 5th day of July, 2019.

KENJI M. PRICE
United States Attorney
District of Hawaii

/s/ Sydney Spector
By _____
SYDNEY SPECTOR
Assistant U.S. Attorney

Attorney for Defendant

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing document was served on the following in the manner set forth below:

<u>Served Electronically through CM/ECF</u>

JARED A. WASHKOWITZ, ESQ.       jwl02475@gmail.com
JAW Legal
1050 Bishop Street, #450
Honolulu, Hawaii 96813

JENNIFER A. HANSEN, ESQ.       jhansen@health-law.com
Hooper, Lundy & Bookman, P.C.
101 W. Broadway, Suite 1200
San Diego, California 92101-3890

Attorneys for Plaintiff
WENDELL FOO, M.D.

DATED: July 5, 2019, at Honolulu, Hawaii.


/s/ Valerie Domingo
_____
U.S. Attorney's Office
District of Hawaii