JARED WASHKOWITZ
JAW LEGAL: HAWAII
Email: jw102475@gmail.com
1050 Bishop Street, #450
Honolulu, HI 96813
Telephone: (808)840-7410
Facsimile: (415)520-9729

PRO HAC VICE
HOOPER, LUNDY & BOOKMAN, P.C.
JENNIFER A. HANSEN
E-Mail:  jhansen@health-law.com
101 W. Broadway, Suite 1200
San Diego, California 92101-3890
Telephone: (619) 744-7300
Facsimile: (619) 230-0987

Attorneys for Plaintiff
WENDELL FOO, M.D.

# UNITED STATES DISTRICT COURT

# DISTRICT OF HAWAI'I

| | |
|---|---|
| WENDELL FOO, M.D.,<br><br>       Plaintiff,<br><br>   vs.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES AND CENTERS FOR MEDICARE AND MEDICAID SERVICES,<br><br>       Defendant. | Case No. CV 18-00490-JAO-WRP<br><br>**PLAINTIFF'S REPLY BRIEF**<br><br>Action Filed:         12/14/2018<br>Trial Date:            None Set<br>U.S. District Judge:  Jill A. Otake<br>U.S. Mag. Judge:   Wes R. Porter |


**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................3

II. ARGUMENT .........................................................................................................4

    A. The Secretary's Final Decision Is Not Supported By Substantial Evidence ....................................................................................................4

    B. The Secretary's Conclusions of Law Were Arbitrary, Capricious, and An Abuse of Discretion ..............................................8

        1. In Revoking Dr. Foo's Medicare Privileges, CMS Ignored the Plain Meaning of 42 C.F.R. § 424.535(a) ...............8

        2. The Secretary's Refusal to Follow the PIM Was Arbitrary, Capricious, and An Abuse of Discretion .................12

III. CONCLUSION...................................................................................................17

# TABLE OF AUTHORITIES

## **Cases**

*Ahmed v. Sebelius*
    710 F.Supp.2d 167 (D. Mass 2010) ............................................................... 12

*Fayad v. Sebelius*
    803 F.Supp.2d 699 (E.D. Mich 2011) ............................................................ 12

*Hays v. Sullivan*
    907 F.2d 1453 (4th Cir. 1990) .......................................................................... 4

*Mike v. Straus*
    274 F.3d 667 (2d Cir. 2001) ........................................................................... 12

*Penny v. Sullivan*
    2 F.3d 953 (9th Cir. 1993) ................................................................................ 4

*Shah v. Azar*
    920 F.3d 987 (5th Cir. 2019) ................................................................... 10, 11

*Tackett v. Apfel*
    180 F.3d 1094 (9th Cir. 1999) .......................................................................... 4

*Widmark v. Barnhard*
    454 F.3d 1063 (9th Cir. 2006) .......................................................................... 4

## **Regulations**

42 C.F.R. § 424.535 ............................................................................................ passim

42 C.F.R. § 502 ............................................................................................................ 8

## I.  INTRODUCTION

Plaintiff Wendell Foo, M.D. ("Dr. Foo") challenges the Secretary of the United States Department of Health and Human Services' (the "Secretary") final decision to revoke his Medicare billing privileges.  The Secretary's decision, rendered by the Appellate Division of the Departmental Appeals Board, was based on its finding that Dr. Foo was no longer operational to provide health care services at 4348 Waialae Avenue—the "practice location" Dr. Foo supposedly identified in his 2014 Medicare revalidation application.  The problem with the Secretary's finding is that there is **no evidence that Dr. Foo ever listed 4348 Waialae Avenue as his practice location in his 2014 application**.  Indeed, his revalidation application clearly states: "No Current Records Exist for Practice Location(s)/Base(s) of Operations."  Nevertheless, the Medicare Administrator Contractor visited the UPS store—which Dr. Foo listed as his correspondence and payment addresses—and deemed him no longer operational to provide Medicare services.  The Secretary's decision lacks substantial evidence because it relies almost entirely on Dr. Foo's 2014 application, which is devoid of practice location information.  But even if Dr. Foo had listed the UPS store as his practice address (which he did not), the Secretary's decision to revoke his privileges was arbitrary, capricious, and an abuse of discretion because it ignored both the plain meaning of 42 C.F.R. § 424.535(a)(5) and procedures set forth in the Medicare Program and

Integrity Manual governing the evaluation of enrollment applications. Dr. Foo hereby incorporates by reference all of the briefing in the underlying administrative record herein and does not waive any of his arguments previously raised.

## II. ARGUMENT

### A. The Secretary's Final Decision Is Not Supported By Substantial Evidence

The Secretary insists that under the applicable standard of review, its decision is entitled to great deference.  While it is not "the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence[,]" his decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citation omitted).  Instead, a court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Tackett*, 180 F.3d at 1098 (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhard*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Here, the Secretary has proffered only a single document—namely, a print-out from CMS's PECOS enrollment system—which supposedly details the information that Dr. Foo provided in his 2014 revalidation application.  It is

undisputed that this purported 2014 application record from PECOS contains **no practice location information at all** under the "Practice Location(s)/Base(s) of Operations" field, which is precisely where this type of information would be reported . (AR 677.) The only references to the 4348 Waialae Avenue address are in the sections concerning Dr. Foo's correspondence and payment information. Despite the clear absence of any address listed under "practice location" in CMS's own 2014 PECOS record, the Secretary incredibly argues that the Waialae address was listed as Dr. Foo's physical practice location in the PECOS enrollment system at the time of Noridian's 2015 on-site review. (Defendant's Answering Brief, at 21.) The Secretary makes this argument by unilaterally substituting Dr. Foo's missing 2014 "practice location" information with the Waialae address he provided in his 2010 application—in blatant disregard of the Medicare Provider Integrity Manual's ("PIM") prohibition against the inclusion of new reasons to support a revocation decision after the **initial** revocation notice. PIM, Ch. 15, § 15.25.2.2.D.

     In doing so, the Secretary has relied entirely on the testimony of Cherie Finneman, a Noridian program analyst. According to Ms. Finneman, the statement, "No Current Records Exist for Practice Location(s)/Base(s) of Operations," appears on an ARD report for "**all sections** of a revalidation enrollment application in which the provider is not changing/updating information." (AR 677, 690–691 (emphasis added).) Because this statement

appeared under "Practice Location" in Dr. Foo's 2014 revalidation application, the Secretary contends that Dr. Foo did not change or otherwise update this information. Therefore, under the Secretary's novel theory, Dr. Foo's 2014 revalidation application *figuratively* lists his purported 2010 "practice location."

But the Secretary conveniently overlooks the fact that CMS's Medicare Enrollment Record dated June 30, 2015, which constitutes a report of Dr. Foo's "current Medicare enrollment in PECOS," also does not list the Waialae address as his practice location. (AR 667.) Rather, the field for "Practice Location Information" states "No Data Provided." If Ms. Finneman's claims were true, then the Enrollment Record would have listed 4348 Waialae Avenue as Dr. Foo's current practice location given that he supposedly made no changes to this field in his 2014 revalidation application. This inconsistency undermines Ms. Finneman's testimony and calls into question the propriety of the Secretary's substitution of Dr. Foo's 2014 application information with 2010 data.

In this case, the substantial evidence the Secretary claims supports his decision consists solely of (1) the absence of a practice location in Dr. Foo's 2014 revalidation application (AR 677–678), (2) Ms. Finneman's self-serving testimony regarding the meaning of the phrase, "No Current Records Exist for Practice Location(s)/Base(s) of Operations," (AR 687–691) and (3) Noridian's illogical site visits to 4348 Waialae Avenue—a UPS store listed as Dr. Foo's **correspondence**

address (AR 670–675). In the face of such "evidence," which hardly amounts to a "scintilla," the Secretary understandably emphasizes the deferential nature of this Court's review while ignoring the Court's concomitant duty to consider the record as a whole and weigh the evidence that both supports and detracts from the Secretary's conclusion.

As further support for his revocation decision, the Secretary claims that Dr. Foo has never alleged that he correctly listed his physical practice locations in his revalidation application and never submitted any credible evidence demonstrating his practice location was anything other than 4348 Waialae Avenue. (Defendant's Answering Brief, at 21.) Both of these contentions are simply untrue. First, the Secretary expressly acknowledged (albeit hidden in a footnote) that Dr. Foo submitted into evidence the written testimony of Deryck Wahl, Dr. Foo's son and the person who has assisted him with his billing services for over 15 years. (Defendant's Answering Brief, at 21, fn. 6.)

In his sworn declaration, Mr. Wahl testified that he correctly entered the addresses of "Hawaiian Eye Center," "SurgiCare of Hawaii," and "Hawaii Endoscopy Center" as separate practice locations on Dr. Foo's 2014 revalidation application. (AR 625.) Mr. Wahl's testimony directly contradicts the Secretary's claim. Secondly, Dr. Foo has submitted hundreds of claims to Medicare plainly indicating service locations other than 4348 Waialae Avenue. (AR 623–624.)

These claims have been routinely processed by CMS for years without issue and constitute credible evidence demonstrating that Dr. Foo's practice location was not at the Waialae address—assuming the Secretary managed to shift the burden of proof (or of production) to Dr. Foo in the first place.

### B. The Secretary's Conclusions of Law Were Arbitrary, Capricious, and An Abuse of Discretion

#### 1. In Revoking Dr. Foo's Medicare Privileges, CMS Ignored the Plain Meaning of 42 C.F.R. § 424.535(a)

The Secretary's interpretation of the Medicare regulations is legally erroneous because it ignored the plain meaning of Title 42 Code of Federal Regulations Section 424.535(a)(5).  Under this section, revocation is permitted "[u]pon on-site review or other **reliable** evidence" that the provider is either: (1) "[n]o longer operational to furnish Medicare-covered items or services" or "[o]therwise fails to satisfy any Medicare enrollment requirement." (emphasis added).

The term "operational" means that "the provider or supplier has a *qualified physical practice location*, is open to the public for the purpose of providing health care related services, is prepared to submit valid Medicare claims, and is properly staffed, equipped, and stocked (as applicable, based on the type of facility or organization, provider or supplier specialty, or the services or items being rendered), to furnish these items or services."  42 C.F.R. § 502 (emphasis added).

Notably, the term "qualified physical practice location" is undefined. Nevertheless, CMS has effectively interpreted this term to mean that a provider must be open to the public for the provision of health care related services **at the physical practice location listed on the provider's revalidation application**. Such a requirement by CMS reads into the statute something that is not there and ignores the realities of Dr. Foo's practice. The reading ignores the plain language of the statute which does not include the bolded text above.

Here, it is undisputed that (1) Dr. Foo performed anesthesia procedures at various ambulatory surgical centers in Hawaii—namely, Hawaiian Eye Center, SurgiCare of Hawaii, and Hawaii Endoscopy Center—which were all physical practice locations open to the public for such purpose, (2) Dr. Foo was prepared to and, indeed, submitted valid Medicare claims for almost 25 years without incident, and (3) at all relevant times Dr. Foo was properly equipped and stocked to provide health care services. Thus, under a plain reading of the statute, Dr. Foo was operational. (*See* AR 622–24, 631–35.)

Additionally, as an anesthesiologist, Dr. Foo does not maintain his own office where he provides health care services. Rather, he performs anesthesia services at the request of a surgeon, who chooses the surgical facility where the procedure is to be performed. (See AR 622, 633–634.) Most often they are ambulatory surgery centers in outpatient settings. Importantly, CMS does not

argue that Dr. Foo did not provide anesthesia services or that the surgical centers where he provided such services were not qualified practice locations. Rather, it improperly focuses on the mere absence of a listed practice location on Dr. Foo's revalidation application as the basis to revoke his billing privileges.

Cases in which Medicare privileges have been revoked under 42 C.F.R. § 424.535(a) have applied a plain meaning and commonsense approach. For instance, in *Shah v. Azar*, the Fifth Circuit upheld the Secretary's revocation of two physician's Medicare privileges under Section 424.535(a)(8). *Shah v. Azar*, 920 F.3d 987, 989 (5th Cir. 2019). Under that section, CMS may revoke a currently enrolled provider's Medicare billing privileges if the provider submits claims for services that could not have been furnished to a specific individual on the date of service. 42 C.F.R. § 424.535(a)(8). Such abuse of billing privileges expressly included instances where "[t]he directing physician or beneficiary [was] not in the state or country when services were furnished." *Id.* In *Shah*, it was undisputed that both physicians billed for Medicare services using their own NPI numbers while out of the country. *Shah*, 920 F.3d at 996. Although the physicians argued that the services were performed by nurse practitioners at their direction, the appellate court reasoned that the plain language of Section 424.535(a)(8) was controlling and affirmed the revocation. *Id.* at 994.

In this instance, the plain language of Section 424.535(a)(5) provides that CMS may revoke Medicare privileges if the physician or supplier is "[n]o longer operational." In this context, the phrase "no longer" necessarily means that the physician was considered operational but has either stopped providing health care services, stopped submitting valid Medicare claims, or is otherwise not equipped or stocked to furnish services. But in this case nothing about Dr. Foo's practice changed. Indeed, he continuously rendered anesthesia services at various surgical centers in Hawaii, continued to submit valid Medicare claims, and was properly equipped to furnish health care services at all relevant times. Unlike in *Shah*, where the physicians' billing practices expressly ran afoul of the statute's plain language, here, Dr. Foo essentially "stands accused" by the Secretary of listing an address **that does not even appear as a practice location** in his 2014 revalidation application. Until CMS's revocation in 2015, Dr. Foo had been operating as a Medicare provider without incident for almost 25 years. (*See* AR 634–635.) Nevertheless, CMS improperly assumed that Dr. Foo was no longer operational **in 2015** based on two site visits to a location purportedly listed on Dr. Foo's **2010** application. Besides these visits and a supposed telephone call to a number listed on Dr. Foo's revalidation application, CMS made no other attempts to gather "reliable evidence" demonstrating that Dr. Foo was "no longer operational" to furnish Medicare services.

Even assuming arguendo that Dr. Foo actually omitted a practice location from his 2014 revalidation application, CMS at most is improperly relying on a mere technicality as the sole basis for revoking his Medicare privileges for two years. Such adverse action, aside from being unwarranted, would also be grossly disproportionate to what was essentially a claimed misunderstanding between Dr. Foo and CMS. Indeed, cases in which courts have upheld revocation under Section 424.535(a), have done so for more egregious violations. *See, e.g., Ahmed v. Sebelius*, 710 F.Supp.2d 167, 169 (D. Mass 2010) (revoking a physician's Medicare billing privileges due to the physician's felony conviction for obstruction of a criminal investigation into health care offenses, which appropriately determined to be detrimental to the best interests of Medicare and its beneficiaries); *Fayad v. Sebelius*, 803 F.Supp.2d 699, 703–04 (E.D. Mich 2011) (finding revocation appropriate where physician had a felony conviction for conspiracy to defraud the United States and his continued participation in Medicare was deemed contrary to the best interests of the program); *Mike v. Straus*, 274 F.3d 667, 701-02 (2d Cir. 2001) (providing for revocation of billing privileges based on provider noncompliance).

    2.    <u>The Secretary's Refusal to Follow the PIM Was Arbitrary, Capricious, and An Abuse of Discretion</u>

The Medicare Program and Integrity Manual ("PIM") sets forth policies and procedures, which govern contractor evaluation of enrollment applications among

other things. The Secretary abused its discretion by arbitrarily and capriciously following some provisions of the PIM while ignoring others. The PIM clearly states that in evaluating practice location information in an enrollment application, a contractor such as Noridian, should consider the nature of the applicant's practice. *See* PIM, Ch. 15, § 15.5.4. If there is missing information in an application, the PIM instructs a contractor to validate missing data where it is disclosed elsewhere in an application or through other sources of documentation. *See id.* Moreover, where a contractor believes information is missing or discrepant, even after a validation attempt, the contractor should attempt to locate the missing information or obtain clarification using an alternative validation method. *See* PIM, Ch. 15, § 15.7.1.3.2.(2)(a). Noridian did not consider the nature of Dr. Foo's practice nor attempt to validate missing data or obtain clarification.

Even assuming that a blank 2014 revalidation application field could somehow be construed to contain the 4348 Waialae Avenue address, at minimum, Noridian—CMS's MAC—was obligated under the PIM to make further inquiry upon "learning" that 4348 Waialae Avenue was the address of a UPS store and not a valid practice location. *See generally* PIM, Ch. 15, §§ 15.7 *et seq.* Indeed, this same address is listed variously as a correspondence or primary practice address on CMS's own NPI Registry database by several physicians and even the State of Hawaii, Department of Health's Medical Marijuana Registry Program. (*See* AR

638, 640–649.) Moreover, at all relevant times, Noridian and CMS had the necessary information to easily validate the nature of Dr. Foo's practice and determine his actual practice locations. Under the PIM's guidance, once the contractor determined that 4348 Waialae Avenue was the address of a UPS store, he or she should have regarded that address as a discrepancy and sought clarification directly from Dr. Foo, particularly where, as here, Dr. Foo's enrollment profile listed several medical storage addresses and his 2014 revalidation application was completely devoid of a practice location. The contractor would have been expressly authorized to consider such information and make further inquiry under the PIM's "processing alternative" provisions.

    Yet, the Noridian contractor took none of these steps. Rather, the contractor elected to conduct two on-site visits to what was obviously a UPS store and not a practice location. This is not the kind of reasonable validation effort contemplated by the PIM, especially when weighed against the severity of the sanction to which providers are subject to if deemed to be no longer operational.

    The Secretary contends that its refusal to require additional investigative steps prior to revocation is appropriate and in accordance with the law because Medicare enrollment requirements specifically require that providers submit all relevant information. However, this position completely ignores the PIM's guidance. If it were true that a MAC has no obligation to make further inquiry

upon finding a discrepancy or other error in a provider's enrollment application, then the PIM's policies and procedures are rendered meaningless. The PIM's provisions obviously contemplate and provide for situations such as this, where there is missing or inconsistent data. Simply because providers are required to submit relevant information does not completely absolve the Medicare contractor from adhering to the PIM's guidelines. Additionally, the Secretary's burden-shifting argument misses the mark. The submission of relevant information by a Medicare provider and a contractor's validation of such information go hand in hand. Both serve as an important check on the integrity of the Medicare program and help to avoid fraud, waste, and abuse.

In this case, the Secretary concluded that the Noridian contractor had no duty to perform additional investigative steps to determine Dr. Foo's practice location in accordance with the PIM, yet at the same time relies on Ms. Finneman's testimony, in which she expressly adhered to PIM's policies and procedures. (*See* AR 723–724, 729.) The Secretary cannot have it both ways. For instance, it cannot rely on the PIM as justification for why Dr. Foo's July 2015 application was returned without further processing by Noridian—as Ms. Finneman did in her declaration—and in the next breath argue that the PIM's guidance is an insufficient basis to require that the contractor take additional steps to validate Dr. Foo's practice location. The Secretary's adherence to some PIM

provisions while ignoring others that would tend to undermine his revocation decision is arbitrary, capricious, and an abuse of his discretion.  Most remarkably of all, the Secretary cannot, and understandably refuses to, explain Noridian and/or Medicare's stunning and blatant violation of the PIM, which expressly forbids "new denial or revocation reasons or chang[ing] a denial or revocation reason listed in the initial determination during the reconsideration process."  PIM, Ch. 15, § 15.25.2.2.D.

Not only did this very thing happen during the reconsideration stage (the introduction of the purported phone log), even more incredibly, it happened when purported content from Dr. Foo's 2010 revalidation application—a time period when Noridian was not even the MAC—was proffered against Dr. Foo for the very first time at the incredibly late and prejudicial stage of administrative law judge appeal.  If due process, the evidentiary rules, and especially the PIM, have any meaning at all, none of the evidence offered by Noridian or CMS after Noridian's initial revocation letter was sent, can be considered and must be deemed stricken from any consideration.

Additionally, the failure to uphold Dr. Foo's timely and continuously raised evidentiary objections to the variety of purported evidence, exhibits and/or rationale submitted via Noridian and/or CMS *after* the initial revocation decision, despite the continuous and clear violations of the Medicare Provider Integrity

Manual, Ch. 15, § 15.25.2.2.D, which specifically instructs Noridian (and by extension, CMS as drafter of PIM) that it "may not introduce new denial or revocation reasons or change a denial or revocation reason listed in the initial determination during the reconsideration process" is also arbitrary, capricious and an abuse of discretion. Substantial evidence does not exist to uphold the revocation.

### III. CONCLUSION

Because the Secretary's revocation decision relies almost entirely on Dr. Foo's 2014 revalidation application, which does not list his practice location, it is not supported by substantial evidence. The record demonstrates that Dr. Foo rendered anesthesia services at various ambulatory surgical centers in Hawaii, submitted valid Medicare claims, and at all relevant times was properly equipped to provide health care services. Thus, under a plain reading of 42 C.F.R. § 424.535(a)(5), Dr. Foo was "operational" to furnish Medicare-covered services. Given the apparent inconsistencies between the practice locations identified in Dr. Foo's Medicare claims and the complete absence of a practice address in his operative 2014 revalidation application, the Secretary abused his discretion by refusing to adhere to the PIM's provisions governing enrollment validation. Accordingly, Dr. Foo respectfully requests that the Secretary's final decision revoking his Medicare billing privileges be overturned in its entirety.

Dated:  August 2, 2019

HOOPER, LUNDY & BOOKMAN, P.C.

By: /s/ Jennifer A. Hansen
 JENNIFER A. HANSEN
Attorneys for WENDELL FOO, M.D.