IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WENDELL FOO, MD,<br><br>                  Plaintiff,<br><br>   vs.<br><br>ALEX M. AZAR II, Deputy and Acting Secretary of Health and Human Services, in his official capacity,<br><br>                  Defendant. | CIVIL NO. 18-00490-JAO-WRP<br><br>**ORDER AFFIRMING DEPARTMENTAL APPEALS BOARD'S FINAL DECISION ON REVIEW OF ADMINISTRATIVE LAW JUDGE DECISION** |

**ORDER AFFIRMING DEPARTMENTAL APPEALS BOARD'S FINAL DECISION ON REVIEW OF ADMINISTRATIVE LAW JUDGE DECISION**

Before the Court is Dr. Wendell Foo's appeal seeking reversal of the Final Decision on Review of Administrative Law Judge Decision ("Final Decision") issued on October 16, 2018 by the Department of Health and Human Services Departmental Appeals Board ("DAB"), which affirmed the revocation of his Medicare enrollment and billing privileges for a two-year period.  Pl.'s Compl., ECF No. 1.  For the reasons set forth below, the Court affirms the Final Decision.

## I.    BACKGROUND

**A.    Relevant Overview of Medicare Program**

The Medicare program provides health insurance benefits to people sixty-

five years old or older and to eligible disabled persons.  42 U.S.C. § 1395c.  The

Secretary of the U.S. Department of Health and Human Services ("the Secretary")

has broad authority to administer the Medicare program.  42 U.S.C. § 1302(a).  To

receive payment for services rendered, Medicare "suppliers," including physicians,

must be enrolled in Medicare and maintain the enrollment requirements.  42 C.F.R.

§ 400.202; 42 C.F.R. § 424.500; 42 C.F.R. § 424.505.  The Secretary administers

the Medicare program through the Centers for Medicare and Medicaid Services

("CMS").  42 C.F.R. § 400.200.  CMS contracts with private administrative

contractors to administer certain aspects of the Medicare program.  *See* 42 U.S.C. §

1395kk-1.

Every five years, suppliers must submit new enrollment applications to re-

enroll as a Medicare supplier.  42 C.F.R. § 424.515.  Suppliers do so by submitting

form CMS-855I, or through an online system called the "Provider Enrollment,

Chain and Ownership System" ("PECOS").  42 C.F.R. § 424.510; CMS Ex. 14,

ECF No. 18-23.  When submitting enrollment applications, suppliers must include

"complete, accurate, and truthful responses to all information requested," 42

C.F.R. § 424.510(d)(2)(i), and must sign a certification statement attesting that "the

information submitted is accurate and that the provider or supplier is aware of, and

abides by, all applicable statutes, regulations, and program instructions."  42

C.F.R. § 424.510(d)(3).

CMS may revoke a supplier's enrollment—and the supplier's ability to bill for services under the Medicare program—for failure to abide by the enrollment requirements or other specified reasons.  42 C.F.R. § 424.535; Final Decision 2, ECF No. 16-6.  Relevant to this appeal, CMS maintains the right to revoke a supplier's enrollment if, after conducting an on-site review or relying on other reliable evidence, CMS determines that the supplier is not "operational" to furnish Medicare-covered services or otherwise fails to satisfy the enrollment requirements.  42 C.F.R. § 424.535(a)(5).

## B.    Revocation of Plaintiff's Medicare Privileges

Plaintiff Wendell Foo is an anesthesiologist who has been enrolled as a Medicare supplier for over twenty-five years.  Pl.'s Compl. ¶ 1, ECF No. 1.  He provides his anesthesiology services to patients undergoing surgery at several Ambulatory Surgery Centers (the "ASC Locations").  Id. ¶ 13.  He receives correspondence at a UPS store with private mailboxes located at 4348 Waialae Ave 5-311 in Honolulu (the "Waialae Address").  Id. ¶¶ 16, 28.

Plaintiff submitted Medicare enrollment applications in 2010 (the "2010 Enrollment Application"), and 2014 (the "2014 Enrollment Application").  CMS Ex. 11, ECF No. 18-20; CMS Ex. 9, ECF No. 18-18.  According to the enrollment form instructions, a "practice location" is "where [the supplier] render[s] services to Medicare beneficiaries," and instructs applicants to list each practice location.

3

CMS Ex. 11 at 16, ECF No. 18-20.  The Waialae Address is not one of Plaintiff's practice locations; it is where Plaintiff has a private mailbox.  Pl.'s Compl. 7–8, ECF No. 1.  The parties dispute whether Plaintiff listed his actual practice locations—the ASC Locations—in his 2010 and 2014 Enrollment Application, or whether he listed the Waialae Address as his practice location.  The ALJ, however, found that Plaintiff listed the Waialae Address as his practice location on his 2010 Enrollment Application, and then re-confirmed that address on his 2014 Enrollment Application.  *See* ALJ Decision II at 10, ECF No. 16-5.

On March 5, 2015 and May 11, 2015, CMS's administrative contractor Noridian conducted on-site inspections at the Waialae Address.  CMS Ex. 5, ECF No. 18-14.  Based on the two inspections, Noridian revoked Plaintiff's Medicare enrollment.  *Id.*  In a letter to Plaintiff dated June 24, 2015, Noridian informed him that his Medicare privileges were revoked pursuant to 42 U.S.C. § 424.535(a)(5) because the Waialae Address was not a "practice location."  *Id.*

After receiving the revocation letter, Plaintiff sought reconsideration of his Medicare enrollment revocation.  CMS Ex. 4, ECF No. 18-13.  On August 27, 2015, Noridian denied his reconsideration request, affirming that his enrollment was revoked because the Waialae Address was not a "practice location."  CMS Ex. 2, ECF No. 18-10.

C.     **Administrative Appeals**

Plaintiff appealed his revocation to the Administrative Law Judge ("ALJ"), who affirmed the revocation ("ALJ Decision I").  ECF No. 16-3.  Plaintiff appealed that decision to the DAB, which remanded the matter back to the ALJ to address certain evidentiary issues ("DAB Decision I").  ECF No. 16-4.  On remand, the ALJ again affirmed the revocation ("ALJ Decision II").  ECF No. 16-5.  Plaintiff appealed ALJ Decision II to the DAB, which affirmed the revocation in the Final Decision.  ECF No. 16-6.

In ALJ Decision II, the ALJ found that Plaintiff did not update his practice location in his 2014 Enrollment Application, and therefore found that the Waialae Address, as stated in his 2010 Enrollment Application, remained as his practice location on file.  ALJ Decision II at 8–9, ECF No. 16-5.  In making this determination, the ALJ relied on the following evidence:  (1) a print-out of the application data contained in Plaintiff's 2010 Enrollment Application (the "2010 Report")[1] which lists the Waialae Address as his practice location, CMS Ex. 11, ECF No. 18-20; (2) the 2010 letter sent to Plaintiff from CMS's prior administrative contractor confirming that his physical address was the Waialae

---

[1] The 2010 Report shows "the information [Plaintiff] provided to CMS in February 2010" as part of his 2010 Enrollment Application.  CMS Ex. 13 ¶ 7, ECF No. 18-22.

Address as stated in the 2010 Enrollment Application, CMS Ex. 10, ECF No. 18-

19; (3) a 2014 PECOS Application Record Data Report from May 2014 ("2014

Report")[2] stating "No Current Records Exist for Practice Location(s)," CMS Ex. 9,

ECF No. 18-18; and (4) the testimony of Cherie Finneman, a Noridian Project

Analyst, responsible for processing enrollment applications.[3] *See* Final Decision at

5–6, 15, ECF No. 16-6; ALJ Decision II at 8–10, ECF No. 16-5.

Finneman stated that the 2014 Report details the information Plaintiff

submitted in his 2014 Enrollment Application through PECOS.  CMS Ex. 13 ¶ 10,

ECF No. 18-22.  She testified that the 2014 Report states "No Current Records

Exist" for the sections in which the applicant did not change or update the

information already present in that section.  *Id.*; ALJ Decision II at 8, ECF No. 16-

5.  Specifically, Finneman said that PECOS would have displayed the Waialae

Address as Plaintiff's current practice location when Plaintiff filled out the 2014

Enrollment Application because that data was entered in the 2010 Enrollment

---

[2] The 2014 Report is a report that "details the information submitted" as part of
Plaintiff's 2014 Enrollment Application through the online PECOS system.  CMS
Ex. 13 ¶ 10, ECF No. 18-22.

[3] The ALJ did not rely on CMS's evidence that during a phone conversation with
Plaintiff's receptionist, the receptionist informed a Noridian representative that the
Waialae Address was Plaintiff's practice location.  The ALJ agreed with the parties
that this evidence was "minimally relevant and not determinative of whether
Petitioner's enrollment revocation was appropriate." ALJ Decision II at 6, ECF
No. 16-5.

Application, and PECOS would have also given Plaintiff the option to change it. *See* Hr'g Tr. 102:6–21, 117:3–9, ECF No. 19-2.  The ALJ found Finneman's testimony credible,[4] and thus concluded that Plaintiff did not change the Waialae Address as his practice location in his 2014 Enrollment Application.  ALJ Decision II at 9–13, ECF No. 16-5.  The ALJ affirmed CMS's revocation of Plaintiff's enrollment because the ALJ found that Plaintiff's reported practice location was not in fact an operational practice location.  *Id.* at 14–15.  Although Plaintiff attempted to undermine Finneman's testimony by highlighting alleged contradictions in the evidence, the ALJ found Finneman's testimony to be consistent with the evidence.  *Id.* at 10–13.

In the Final Decision, the DAB affirmed the ALJ.  The DAB found there was substantial evidence for the ALJ to find that Plaintiff had provided CMS with the Waialae Address as his physical practice location.  Final Decision 20, ECF No. 16-6.  The DAB held that CMS had a valid basis to revoke Plaintiff's Medicare Privileges under 42 C.F.R. 424.535(a)(5), because Plaintiff reported the Waialae Address as his physical practice location in his 2014 Enrollment Application and CMS discovered during its on-site reviews that he was not operational at that address.  *Id.* at 21–22.  The DAB also rejected Plaintiff's additional arguments that

---

[4] Finneman presented written direct testimony but was also subject to cross examination.  *See* Hr'g Tr. 73–113, ECF No. 19-2.

CMS should have taken more steps to determine his real practice locations, that Congress cannot delegate discretionary authority to private administrative contractors to revoke Medicare enrollment privileges, and that equitable concerns warranted reversal. *Id.* at 22–25.

## D.     Procedural History

Plaintiff filed the Complaint in this Court on December 14, 2018, appealing the Final Decision under 42 U.S.C. §§ 1395cc(h)(1)(A) and 405(g).  Pl.'s Compl., ECF No. 1.  Plaintiff filed his Opening Brief on June 7, 2019.  Pl.'s Opening Br., ECF No. 23.  Defendant filed an Answering Brief on July 5, 2019.  Def.'s Answering Br., ECF No. 24.  Plaintiff filed a Reply Brief on August 2, 2019.  Pl.'s Reply Br., ECF No. 25.  The Court heard oral argument on August 30, 2019.

## II.     STANDARD OF REVIEW

Plaintiff's appeal of the Final Decision is brought pursuant to 42 U.S.C. § 405(g), as required under 42 U.S.C. § 1395cc(h)(1)(A).  Pl.'s Compl. ¶ 2, ECF No. 1.  The Secretary's findings of fact "shall be conclusive" if they are "supported by substantial evidence."  42 U.S.C. § 405(g).  Defendant thus argues that the Court's review is limited to ensuring that substantial evidence supports the Secretary's factual findings, and that the Secretary applied the "correct legal standard."  Def.'s Answering Brief 16, ECF No. 24.  Plaintiff, however, argues that this case is governed by the Administrative Procedure Act's ("APA") arbitrary,

capricious, or abuse of discretion standard.  Pl.'s Opening Brief 11–12, ECF No. 23.  The two standards, however, are largely the same.  *See Maple Drive Farms Ltd. P'ship v. Vilsack*, 781 F.3d 837, 852 n.22 (6th Cir. 2015) ("[T]he two tests have a tendency to converge, and the difference between the the two is 'largely semantic.'" (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 684 (D.C. Cir. 1983)));  *Bangor Hydro-Elec. Co. v F.E.R.C.*, 78 F.3d 659, 663 n.3 (D.C. Cir. 1996) (noting that the "substantial evidence" and "arbitrary and capricious" standards are essentially the same substantive standard).

Thus, although Plaintiff and Defendant use different language, the standard of review here is not in dispute: the Secretary's decision "will be set aside only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . or unsupported by substantial evidence.'"  *Kaiser Found. Hosps. v. Sebelius*, 649 F.3d 1153, 1157 (9th Cir. 2011) (quoting 5 U.S.C. 706(2)(A), (E));  *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (Secretary's determination "will be disturbed only if it is not supported by substantial evidence or is based on legal error").  In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance," *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)), and that "a reasonable mind may accept it as adequate to support a

conclusion." *Travers v. Shalala*, 20 F.3d 993, 996 (9th Cir. 1994) (quoting *Hudson v. Bowen*, 849 F.2d 433, 434 (9th Cir. 1988)). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting *Matney*, 981 F.2d at 1018). When determining whether the Secretary's conclusion was supported by substantial evidence, the Court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

With respect to the Secretary's conclusions of law, the Ninth Circuit gives "'substantial deference' to the Secretary's interpretation of Medicare regulations." *Palomar Medical Ctr. v. Sebelius*, 693 F.3d 1151, 1159 (9th Cir. 2012) (citing *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)). "The Secretary's interpretation is controlling unless it is "plainly erroneous or inconsistent with the regulation." *Id.* (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

## III.   DISCUSSION

Plaintiff offers several grounds for reversal of the DAB decision, none of which prevail when applying the standard of review.

### A.   There Was Substantial Evidence to Conclude that Plaintiff Listed the Waialae Address as His Practice Location on His 2010 Application.

Plaintiff argues that there was insufficient evidence to find that Plaintiff listed the Waialae Address as his practice location on his 2010 Enrollment

Application.  Pl.'s Opening Br. 18–19, 24, ECF No. 23.  Plaintiff maintains that he never listed the Waialae Address as his practice location on any application, and also argues that the ALJ should not have relied on the 2010 Enrollment Application to determine what he submitted in the 2014 Enrollment Application. *Id.*

Finneman—whom the ALJ found credible—testified that the 2010 Report was an authentic and accurate document showing that Plaintiff entered the Waialae Address as his practice location in his 2010 Enrollment Application.  CMS Ex. 13 ¶ 7, ECF No. 18-22.  The Court will not disturb the ALJ's assessment of Finneman's credibility.  *See Todd Pac. Shipyards Corp. v. Dir., Office of Workers Comp. Programs, U.S. Dep't of Labor*, 914 F.2d 1317, 1321 (9th Cir. 1990).  Further, the prior administrative contractor sent Plaintiff a letter in 2010 confirming that he listed the Waialae Address as his physical location.[5]  CMS Ex. 10, ECF No. 18-19.  At the hearing, Counsel for Plaintiff argued that the letter could not be relied on because it was addressed to Susan L Foo, not Plaintiff.  But the letter was correctly mailed to the person Plaintiff listed as the contact person in

---

[5] The 2010 letter did not use the term "practice location" but rather "physical address."  But the 2010 Report reflects that Plaintiff's practice location was his physical location and vice versa.  *See* CMS Ex. 11 at 3, ECF No. 18-20.  And the parties do not dispute that the terms "physical address" or "physical location" may be used to refer to the practice location.  Indeed, the regulations require suppliers have a "physical practice location."  *See* 42 C.F.R. § 424.502.

his 2010 Enrollment Application. *See* CMS Ex. 11 at 4, ECF No. 18-20 (listing "Susan L Foo" at the Waialae Address in the "Contact Information"). All of this amounts to substantial evidence that Plaintiff entered the Waialae Address as his practice location in his 2010 Enrollment Application.

Regarding Plaintiff's argument that the 2010 Report is irrelevant to what Plaintiff listed in the 2014 Report, Finneman testified that the PECOS enrollment system does not start from scratch with each re-enrollment application. Instead, the re-enrollment application shows the data currently on file and allows the applicant to confirm or change it. *See* Hr'g Tr. 102:6–21, 117:3–9, ECF No. 19-2; CMS Ex. 13 ¶ 10, ECF No. 18-22. Thus, to the extent that Plaintiff did not change his practice location address in his 2014 Enrollment Application, the address he entered in 2010 is relevant to showing what address he confirmed.

**B.    There Was Substantial Evidence to Find that Plaintiff Did Not Change His Practice Location in His 2014 Enrollment Application.**

Plaintiff contends that there was insufficient evidence for the ALJ to conclude that Plaintiff did not change his practice location in his 2014 Enrollment Application. Pl.'s Opening Br. 19–24, ECF No. 23. Finneman testified that the 2014 Report states "No Current Records Exist" in sections that Plaintiff did not change or update. CMS Ex. 13 ¶ 10, ECF No. 18-22; ALJ Decision II 8, ECF No. 16-5; Hr'g Tr. 87–88, 102, ECF No. 19-2. But Plaintiff argues that Finneman's testimony is not credible because it is contradicted by discrepancies in the various

PECOS reports.

### i.     The 2015 Screenshot and 2016 Report

First, Plaintiff argues that "CMS failed to provide a clear explanation as to why [the 2014 Report] looks different from" a screenshot of a PECOS enrollment application he filled out in 2015 (the "2015 Screenshot," Pl.'s Ex. 17, ECF No. 18-3), and that the 2010 Report "looks different from" a report showing Plaintiff's enrollment data in 2016 (the "2016 Report," Pl.'s Ex. 18, ECF No. 18-4).  Pl.'s Opening Br. 19, ECF No. 23.  Plaintiff argues that "[n]either the July 2015 screenshot, nor the [2016 Report] shows a message that 'No Current Records Exist' and the field for the medical records storage facilities remains populated with [his] addresses, despite *no changes to that medical records storage information*."  *Id.* at 20 (emphasis in original).  But the ALJ found that these alleged discrepancies did not undermine Finneman's testimony, and that finding is supported by substantial evidence.

The ALJ found that the 2015 Screenshot is a different type of document than the 2014 Report.  ALJ Decision II 13, ECF No. 16-5.  Finneman explained that the 2015 Screenshot showed what Plaintiff typed into his application and viewed from his end and that the 2015 Screenshot displays information differently than the 2014 Report.  *See* Hr'g Tr. 103–104, 112–113, ECF No. 19-2.  Unlike the 2015 Screenshot, the 2014 Report displays "No Current Records Exist" for the sections

13

"in which the provider is not changing/updating information."  CMS Ex. 13 ¶ 10, ECF No. 18-22.  This adequately supports the ALJ's findings regarding Finneman's testimony.

Plaintiff also argues that because the 2016 Report displays the addresses of Plaintiff's medical storage facilities rather than a message of "No Current Records Exist," despite there being no change to those addresses since 2010, Finneman's testimony regarding the significance of the "No Current Records Exist" message should be discredited.  Pl.'s Opening Br. 20, ECF No. 23.  But Finneman testified that an "enrollment record is generated using the approved application data," whereas the 2014 Report is the "Application Record Data Report which details the information submitted on May 14, 2014 to revalidate the enrollment of [Plaintiff] via the online PECOS system."  CMS Ex. 13 ¶¶ 4, 10, ECF No. 18-22.  Indeed, the title of the 2014 Report is "Application Data Record Report," and the title of the 2016 Report is "Revoked Medicare Enrollment Record."  *Compare* CMS Ex. 9, ECF No. 18-18 *with* Pet'r's Ex. 18, ECF No. 18-4.  There was thus substantial evidence for the ALJ to conclude, based on Finneman's testimony, that the two reports display different information and therefore there was no discrepancy.  *See* ALJ Decision II at 12 n.14, ECF No. 16-5; Final Decision 17, ECF No. 16-6.

In his Reply, Plaintiff raises for the first time yet another alleged discrepancy.  Plaintiff argues that the Secretary overlooked a separate PECOS

14

report from June 30, 2015, CMS Ex. 4 at 8–10, ECF No. 18-13, which Plaintiff

contends establishes a discrepancy with Finneman's testimony.  *See* Pl.'s Reply Br.

7, ECF No. 25.  But Plaintiff does not identify when, if ever, Plaintiff raised this

argument in the ALJ proceedings or before the DAB.  The argument is therefore

waived for two reasons:  (1) it was not raised below, *see Shaibi v. Berryhill*, 883

F.3d 1102, 1109–1110 (9th Cir. 2017); and (2) Plaintiff did not argue the point in

his Opening Brief, thus depriving Defendant of an opportunity to respond, *see,*

*e.g.*, *Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846, 852 n.3 (9th Cir. 2012).

### ii.    The correspondence address information

Second, Plaintiff argues that "if the practice location information was

missing from the 2014 Report because it did not change, the correspondence

address information should have been missing for the same reason."  Pl.'s Opening

Br. 20, ECF No. 23.  But the ALJ found there were no instances in which the 2014

Report listed identical correspondence information to the 2010 Report.  *See* ALJ

Decision II at 12, ECF No. 16-5 ("I observe there are subtle differences in the

contact information reported in the two applications.").  Indeed, the 2014 Report

states "No Current Records Exist" for the mailing address section.  *See* CMS Ex. 9

at 1, ECF No. 18-18.  And with respect to the contact person information, the 2014

Report lists "Foo, Wendell" at "4348 Waialae Ave *Unit* 5-311" as the "added"

contact person, *see* CMS Ex. 9 at 2, ECF No. 18-18 (emphasis added), but the

2010 Report lists "Wendell K.S. Foo" at "4348 Waialae Ave 5-311" as the contact person, CMS Ex. 11, ECF No. 18-20.  Thus, the 2014 Report and the 2010 Report show different forms of Plaintiff's name and even a subtle difference in the address itself: the 2014 Report shows "Unit 5-311" whereas the 2010 Report shows only "5-311."  Thus, there was substantial evidence for the ALJ to conclude that a comparison of the 2014 and 2010 Reports does not contradict Finneman's testimony.

### iii.  Plaintiff's demographic information

Third, Plaintiff argues that if Finneman's testimony was accurate, Plaintiff's "name, date of birth, state in which he was born, social security number, practitioner type, specialty type and so forth should also have been missing" but "[Plaintiff's] demographic data, does appear in the [2014 Report]."  Pl.'s Opening Br. 20, ECF No. 23.  The ALJ found that the "demographic information" would be expected to be included in reports because it is "static information," and thus the fact that the 2014 Report lists Plaintiff's demographic information rather than stating "No Current Records Exist" was not inconsistent with Finneman's testimony.  *Id.*

The ALJ had substantial evidence to make this conclusion.  First, the 2014 Report does in fact state "No Current Records Exist" for Plaintiff's "Physician Specialty" and other "Basic Information."  *See* CMS Ex. 9 at 1, ECF No. 18-18.

Second, the 2014 Report lists Plaintiff's Name, Social Security Number, and Contractor ID in the heading of the report, rather than in the body of the Report that begins with "Section 1: Basic Information." *Id.* Indeed, without that heading information, it is unclear how the 2014 Report would be identified as belonging to Plaintiff.

### iv. Plaintiff's declarations

Fourth, Plaintiff argues that even though the 2014 Report shows "No Current Records Exist" for his practice location, he did in fact input the correct ASC Locations as practice locations in his 2014 Enrollment Application. Pl.'s Opening Br. 21–22, ECF No. 23. Plaintiff submitted two declarations attesting that he listed the ASC Locations as his practice locations on his 2014 Enrollment Application. *See* Pet'r's Ex. 19 ¶¶ 12–16, ECF No. 18-5; Pet'r's Ex. 21 ¶¶ 10–14, ECF No. 18-7. Plaintiff argues that because "providers can submit information in PECOS that is not added or included in the provider's official enrollment," the fact that the 2014 Report states "No Current Records Exist" does not prove that he did not input his ASC Locations in his 2014 Enrollment Application. Pl.'s Opening Br. 21–22, ECF No. 23. But the ALJ credited Finneman's testimony, which was subject to cross-examination, over Plaintiff's declarations. Specifically, the ALJ found that Finneman's testimony was supported by the documentary evidence, whereas Plaintiff's declarations were not supported by the evidence. ALJ Decision

II at 9, ECF No. 16-5.

At bottom, there is evidence favoring both parties' assertions.  Plaintiff's declarations support his contention that he listed the correct ASC Locations in his 2014 Enrollment Application, and the system failed to store that information, whereas the 2014 Report combined with Finneman's testimony supports the conclusion that Plaintiff did not enter that information.  But even where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Aukland*, 257 F.3d at 1035 (quoting *Matney*, 981 F.2d at 1018).  Deferential review here makes sense because the ALJ had the benefit of live testimony from Finneman under cross-examination.  Looking at the evidence as a whole, the Court cannot say that the ALJ lacked substantial evidence to conclude that Plaintiff—perhaps by mistake—failed to enter his correct ASC Locations in his 2014 Enrollment Application and instead confirmed the Waialae Address as his practice location.

### v.      The phone log

Plaintiff also argues that the ALJ erred by admitting the phone log that documented an alleged conversation between a Noridian employee and one of Plaintiff's employees, in which Plaintiff's employee allegedly confirmed that the Waialae Address was Plaintiff's practice location.  Pl.'s Opening Br. 22–24, ECF No. 23.  Plaintiff asks this court not to give "any weight" to the phone log or Ms.

Hoffmann's testimony regarding the phone conversation. *Id.* The ALJ did not rely on the phone log or the alleged phone conversation, *see* ALJ Decision II at 6, ECF No. 16-5, nor did the DAB, *see* Final Decision 20, ECF No. 16-6. The Court therefore does not consider the phone log evidence in this appeal.

## C.   Plaintiff Failed to Sufficiently Raise a Constitutional Violation.

Plaintiff argues in a single paragraph, and without citation, that the Secretary's delegation of revocation decisions to private administrative contractors is unconstitutional. Pl.'s Opening Br. 25, ECF No. 23. Defendant notes that the Medicare Act specifically permits the Secretary to contract with private parties to administer certain aspects of the Medicare program. Def.'s Answering Br. 35, ECF No. 24 (citing 42 U.S.C. §§ 1395kk-1, 1395ddd). Plaintiff ignores this issue in his Reply. *See* Pl.'s Reply Br., ECF No. 25.

Plaintiff's perfunctory assertion of a constitutional violation cannot survive. The Court declines to search for authority to discern a constitutional violation where Plaintiff has wholly failed to provide any. *See generally Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (holding that a "bare assertion of an issue does not preserve a claim," and that the Ninth Circuit will not "manufacture arguments for an appellant").

## D.   The Secretary Did Not Act Contrary to Law or Abuse its Discretion in Revoking Plaintiff's Medicare Enrollment.

Plaintiff offers various arguments asserting that the Secretary acted contrary

to law or abused its discretion in revoking Plaintiff's Medicare privileges. Plaintiff reiterates that he "only identified [the Waialae Address] as a <u>correspondence</u> address." Pl.'s Opening Br. 25, ECF No. 23 (emphasis in original). He contends that "CMS and Noridian have at all relevant times resorted to alleged extrinsic evidence to impute the [Waialae Address] as a **physical practice location**, even though the PECOS record undisputedly only lists the [Waialae Address] as a **correspondence address**." *Id.* at 26 (emphases in original). Thus, Plaintiff argues that Noridian's revocation based on its two on-site visits to the Waialae Address was contrary to law because Plaintiff never used the Waialae Address as anything other than a correspondence address. *Id.* But as the Court has already discussed, there was substantial evidence to find that Plaintiff listed the Waialae Address as his practice location in his 2010 Enrollment Application, and then re-confirmed that information in his 2014 Enrollment Application by not changing it.

Plaintiff next asserts that, even assuming he listed the Waialae Address as his practice location on his 2014 Enrollment Application, Noridian and CMS should have known that Plaintiff was operational at the ASC locations based on his Medicare reimbursement claims. *See* Pl.'s Opening Br. 26, 29–30, ECF No. 23. The DAB correctly found no error in the ALJ's finding that there was "no reason for CMS or its contractors to refer to [the claim forms] to seek information about a supplier's practice location," and that because a supplier "may submit hundreds, or

20

even thousands, of these claims forms each year, [] it would be absurd to expect that each claim reimbursement form should be reviewed" to determine where a supplier is actually practicing, "when [the enrollment application] exists for that very purpose."  Final Decision 24, ECF No. 16-6.  And Plaintiff does not address this sound reasoning.  Moreover, Finneman testified that most of the Noridian analysts dealing with enrollment issues do not have access to the claim forms.  *See* Hr'g Tr. 97–98, ECF No. 19-2.

Plaintiff further contends that, regardless of the address he listed as his practice location in his 2014 Enrollment Application, because he was operational at the ASC Locations, the Secretary abused its discretion by revoking his privileges for being non-operational.  Plaintiff argues that the plain meaning of 42 C.F.R. 424.535(a)(5) only allows for revocation of a supplier who is no longer operational at all, rather than nonoperational at the practice location specified in the enrollment application.  *See* Pl.'s Opening Br. 6–8, ECF No. 23; Pl.'s Reply Br. 9–11, ECF No. 25.  In opposition, Defendant argues the regulations support the DAB's interpretation.  *See* Def.'s Answering Br. 29–32, ECF No. 24.

The DAB held that under 42 C.F.R. § 424.535(a)(5), CMS may revoke a supplier's enrollment if it finds that the supplier is not operational at the practice location specified in his or her enrollment application.  *See* Final Decision 21, ECF No. 16-6.  In support, the DAB noted first that the regulations require a supplier to

21

certify that the information provided in his or her enrollment application is truthful
and accurate, 42 C.F.R. § 424.510(d)(2), which ensures that CMS "may rely on the
accuracy of the information in administering the Medicare program."  Final
Decision 26, ECF No. 16-6.  The DAB stated that such reliance is "vital" because
CMS must administer the program to "well more than a half million physicians . . .
subject to periodic site verification visits."  *Id.*  Second, the DAB relied on the
definition of "operational," which requires a "qualified physical practice location."
42 C.F.R. § 424.502.  The DAB equated the "qualified physical practice location"
with the location "that has been provided by the provider and is currently on file
with CMS."  Final Decision 21, ECF No. 16-6 (citing to *Care Pro Home Health,
Inc.*, DAB No. 2723 (2016)).  Third, the DAB pointed out that under 42 C.F.R.
§ 424.517(a), CMS is authorized to perform on-site inspections to verify the
accuracy of the enrollment application, not only to verify if the supplier is
"operational."  *Id.*  Fourth, the DAB noted several agency rules stating that CMS
must ensure suppliers are operational at the location specified in the enrollment
application.  *See* Final Decision 2, 22; ECF No. 16-6; *see also* 76 Fed. Reg. 5862
(Feb. 2, 2011) ("[T]he primary purpose of an unannounced and unscheduled site
visit is to ensure that a [supplier] is operational at the practice location found on the
Medicare enrollment application."); 73 Fed. Reg. 69726 (Nov. 19, 2008)
(assuming that revocation is proper "when CMS or [its] contractor determines that

a provider or supplier . . . is no longer operating at the practice location provided . . . on a . . . Medicare enrollment application"). And Finally, the DAB observed that it has "regularly upheld" revocations where the supplier is nonoperational "at the address reported as the practice location on enrollment applications," regardless of whether the supplier is operational elsewhere. Final Decision 21, ECF No. 16-6. Prior DAB decisions have indeed upheld such revocations. *See, e.g.*, *Jason R. Bailey, M.D., P.A.*, DAB No. 2855 (H.H.S. March 5, 2018).[6]

Plaintiff largely ignores the DAB's basis for its interpretation, and instead cites to *Shah v. Azar*, 920 F.3d 987, 989 (5th Cir. 2019), to argue that "[c]ases in which Medicare privileges have been revoked under 42 C.F.R. § 424.535(a) have applied a plain meaning and commonsense approach." Pl.'s Reply Br. 11, ECF No. 25. Plaintiff argues that the DAB's interpretation in this case was contrary to the plain language of the regulation. *Id.* at 12. But nothing in *Shah* casts doubt on the DAB's interpretation here. In *Shah*, the Fifth Circuit affirmed a revocation

---

[6] Plaintiff points to a complaint filed by a plaintiff named "Jason Bailey" in the U.S. District Court for the Southern District of Texas, *Bailey v. Berryhill*, Case No. 4:2019-cv-01669, and argues that although Plaintiff has not been able to determine what that case is about, assuming it is an appeal of the DAB's decision in *Jason R. Bailey, M.D., P.A.*, DAB No. 2855 (H.H.S. March 5, 2018), the DAB's reliance on the *Jason R. Bailey* case was an abuse of discretion. Pl.'s Suppl. Br. 2, ECF No. 27. Without commenting on the effects, if any, an appeal of a DAB decision would have on the DAB's ability to rely on it, the Court notes that *Bailey v. Berryhill*, Case No. 4:2019-cv-01669, was dismissed with prejudice on September 9, 2019. The Court need not address this case further.

under § 424.535(a)(8) when a supplier billed for services allegedly rendered at a time when the supplier was out of the country. *Id.* at 996. *Shah* did not address § 424.535(a)(5). Moreover, as discussed below, the Court finds that the DAB's interpretation of § 424.535(a)(5)—to allow revocation where the supplier is not operational at the location specified in the enrollment application—is not "plainly erroneous or inconsistent with the regulation." *Palomar*, 693 F.3d at 1159 (quoting *Auer*, 519 U.S. at 461).

Under § 424.535(a)(5), revocation is appropriate not only if the supplier is "no longer operational," but also if the supplier "otherwise fails to satisfy any Medicare enrollment requirement." 42 C.F.R. § 424.535(a)(5). As the DAB explained, the regulations require a supplier to certify that the information provided in his or her enrollment application is truthful and accurate. 42 C.F.R. § 424.510(d)(2). Thus, when these provisions are read together, and combined with the various other regulations and agency rules that the DAB cited in support of its interpretation, it is reasonable to conclude that CMS may revoke a supplier's enrollment for failing to operate at the location specified on the certified enrollment application. Further, the Court finds persuasive the DAB's conclusion that the regulations were created, at least in part, to ensure that "CMS may rely on the accuracy of the [enrollment] information in administering the Medicare program." Final Decision 26, ECF No. 16-6. Therefore, the Court finds no basis

24

to conclude that the DAB's interpretation here is contrary to law.[7]

Finally, Plaintiff argues that even if Plaintiff listed the Waialae Address as his practice location, and even if the regulations allow for revocation of Medicare Privileges of suppliers who are nonoperational at the practice locations listed in their enrollment applications, CMS abused its discretion by basing its revocation on two on-site visits without conducting further inquiry.  *See* Pl.'s Opening Br. 27–32, ECF No. 23.  Plaintiff contends that CMS and Noridian should have "resolved" any "purported misunderstandings" by speaking to Plaintiff personally.  *Id.* at 28, 31.  Plaintiff asserts two grounds for requiring CMS to conduct further inquiry.

First, Plaintiff argues that the purpose of the Medicare enrollment regulations is to reduce fraud.  *Id.* at 30.  Thus, Plaintiff contends that Noridian and CMS should have spoken to Plaintiff in person, which would have "easily resolved" any "misunderstanding" and would have established that Plaintiff was not engaged in fraud and was not a bad actor.  *Id.* at 31.  Plaintiff avers that requiring CMS to make additional inquiries is particularly justified here because it was "patently obvious that there is a UPS Store at [the Waialae Address]."  *Id.* at

---

[7] Plaintiff also argues that "cases in which courts have upheld revocation under Section 424.535(a), have done so for more egregious violations," and cites to two cases concerning revocations that Plaintiff construes as "more egregious" than the conduct at issue here.  Pl.'s Reply Br. 13, ECF No. 25.  But cases affirming revocations where suppliers have behaved more egregiously do not guide the outcome in the instant case.

28.

But mandating such an inquiry would undermine the regulation's requirement that suppliers certify the accuracy of the information in enrollment applications and would undercut CMS's ability to rely on that information in performing its auditing duties.  And although Plaintiff argues otherwise, where a supplier certifies that he or she practices medicine at a location that is obviously not a practice location—such as a UPS mail box facility—it could be argued that such a certification is more likely to be fraudulent, not less, because there can be no mistake that the supplier knew he or she does not practice there.[8]

Moreover, CMS oversees a complex and administratively challenging Medicare program governing "well more than a half million physicians."  Final Decision 26, ECF No. 16-6.  While individual inquiries might be ideal, requiring them would surely consume significant time and resources.  Evaluating how to strike a balance between individual inquiry and efficiency in the program is a discretionary function left to the Secretary.

Second, Plaintiff argues that Chapter 15 of the Medicare Program Integrity Manual ("PIM") requires CMS to engage in a more thorough inquiry to determine

---

[8] Of course, the Court need not consider whether, if Plaintiff listed the Waialae Address as his practice location, it was an innocent mistake.  The Court need only address whether CMS's decision to revoke Plaintiff's enrollment was supported by substantial evidence and otherwise in accordance with the law.

Plaintiff's true practice locations.  *See* Pl.'s Opening Br. 29, ECF No. 23.  The PIM

offers operating instructions for CMS's administrative contractors. [9]  The PIM is

not a regulation or statute, and therefore does not carry the same force of law.

The DAB held that the PIM's instructions regarding when to seek clarifying

information is "intended to cover the situation in which a contractor is unable to

confirm the physical existence of a practice location."  *See* Final Decision 24, ECF

No. 16-6.  The DAB held that where "the contractor can determine upon on-site

review that the supplier or provider is not operational at the physical location

designated on the enrollment application," the PIM does not require further

investigation into possible alternative physical practice locations.  *Id.* at 23.  The

Court must give "substantial deference to the Secretary's interpretation of

Medicare regulations," *Palomar Medical Ctr.*, 693 F.3d at 1159, and consider them

controlling unless "plainly erroneous or inconsistent with the regulation."  *Id.*

(quoting *Auer*, 519 U.S. at 461).  Although the PIM is not a regulation or statute,

because the Court must give substantial deference to the Secretary's interpretation

of the regulations, so too must the Court give substantial deference to the

Secretary's interpretation of its own manual, at least where, as here, the Plaintiff

---

[9] The ALJ and DAB addressed the PIM in their decisions, and CMS's Exhibit 21 is
a document showing an updated version of the PIM.  *See* ALJ Decision II at 11,
13, 16, ECF No. 16-5; Final Decision 23–24, ECF No. 16-6.

attempts to rely on the PIM as controlling authority in the same manner as a regulation.  Plaintiff has not explained how the DAB's interpretation of the PIM is plainly erroneous or otherwise contrary to law.  Thus, the Court will not disturb the DAB's interpretation of the PIM.

E.      **The *Adora* case**

Plaintiff argues that a prior DAB decision, *Adora Healthcare Services, Inc.*, DAB No 2714 (H.H.S. June 20, 2016), supports Plaintiff's claim that CMS's revocation was improper, suggesting that the DAB abused its discretion by not following a prior DAB decision without adequate explanation.  Pl.'s Opening Br. 32, ECF No. 23.  Generally, where an agency departs from its prior precedent, it must do so with adequate explanation.  *See Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 808 (1973) (agencies have a "duty to explain its departure from prior norms"); *Greater Bos. Television Corp. v. F.C.C.*, 444 F.2d 841, 852 (D.C. Cir. 1970) ("[A]n agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored.").

The *Adora* case, however, is consistent with the DAB's interpretation in this case.  In *Adora*, a Medicare supplier listed an accurate practice location in an enrollment application, but then moved to a new practice location.  *Adora*, DAB No 2714.  CMS conducted an inspection of the old practice location within the 90-

28

day window in which a supplier may notify CMS of a change of location, and the court held that the revocation was invalid because the on-site inspection occurred "before Petitioner's 90-day period for reporting its new location had expired." *Id.* Thus, the court merely held that the revocation was "premature," implying that if the revocation had taken place after the 90-day window, the revocation could be affirmed. *Id.* Here, however, Plaintiff does not allege that the two on-site inspections in March and May of 2015 occurred during that 90-day window. Rather than contradicting the DAB's conclusion, the *Adora* case supports the DAB's interpretation that under 42 C.F.R. § 424.535(a)(5), CMS may revoke a supplier's enrollment where the supplier is not operational at the practice location provided in the enrollment application, regardless of whether the supplier operates elsewhere. There is thus no basis to conclude that the DAB changed its course from prior precedent without adequate explanation.

## IV.   CONCLUSION

For the foregoing reasons, the Final Decision is affirmed.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, September 23, 2019.



Jill A. Otake
United States District Judge

CV 18-00490 JAO-WRP, *Foo v. Azar*, ORDER AFFIRMING DEPARTMENTAL APPEALS BOARD'S FINAL DECISION ON REVIEW OF ADMINISTRATIVE LAW JUDGE DECISION